**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X:

THE PEOPLE OF THE STATE OF NEW
YORK by Letitia James,

    Plaintiff,

  -against-

PUFF BAR, *et al.*,

    Defendants.

Case No. 1:25-cv-01445-MMG

------------------------------------------------------

## MEMORANDUM AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO SEVER

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   Background ......................................................................................................... 2

      A.    The Defendants ........................................................................................ 2

            1.    The Puff Defendants ...................................................................... 2

            2.    The Demand Defendants................................................................. 4

            3.    YLSN Distribution Inc. d/b/a Happy Distro ................................. 4

            4.    Midwest Goods ............................................................................... 5

            5.    Pod Juice ......................................................................................... 6

            6.    Safa Goods ...................................................................................... 6

            7.    Mi-One ............................................................................................ 7

            8.    Mylé ................................................................................................. 8

            9.    Price Point....................................................................................... 8

      B.    The State's Claims Against Defendants ................................................. 10

III.  Argument .......................................................................................................... 10

      A.    The Claims Do Not Arise Out of the Same Transaction or Occurrence ...............11

      B.    The Claims Do Not Allege Common Questions of Law or Fact .......................... 13

      C.    The Other Discretionary Factors Weigh In Favor of Severing the
            Defendants and Claims ........................................................................... 15

IV.   Conclusion ........................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**

*Agnesini v. Doctor's Assocs., Inc.*,
　275 F.R.D. 456 (S.D.N.Y. 2011) ............................................... 11

*Androphy v. Smith & Nephew, Inc.*,
　31 F. Supp. 2d 620 (N.D. Ill. 1998) ........................................ 13

*Arista Records LLC v. Doe*,
　589 F. Supp. 2d 151 (D. Conn. 2008) ..................................... 11

*Baltas v. Quiroz*,
　2024 U.S. Dist. LEXIS 185960, No. 3:24cv1277(VAB) (D. Conn. Oct. 11, 2024) ................ 12

*Crown Cork & Seal Co., Inc. Master Retirement Trust v. Credit Suisse First Boston Corp.*,
　288 F.R.D. 331 (S.D.N.Y. 2013) ............................................ 15

*D'Angelis v. Bank of Am., N.A.*,
　No. 13-CV-5472(JS)(AKT), 2014 U.S. Dist. LEXIS 6087 (E.D.N.Y. Jan. 16, 2014) ............ 16

*Erausquin v. Notz, Stucki Mgmg. (Bermuda) Ltd.*,
　806 F. Supp. 2d 712 (S.D.N.Y. 2011) .................................11, 16

*Estée Lauder Cosmetics Ltd. v. Partnerships and Unincorporated Associations*,
　334 F.R.D. 182 (2020) ......................................................... 3

*In re EMC Corp.*,
　677 F.3d 1351 (Fed. Cir. 2012) ............................................ 13

*Jem Accessories v. JVCKENWOOD USA Corp.*,
　2021 U.S. Dist. LEXIS 33687, No. 11:20-cv-4984 (GHW) (S.D.N.Y. Feb. 22, 2021) .......... 16

*Kehr v. Yamaha Motor Corp.*,
　596 F. Supp. 821 (S.D.N.Y. 2008) ........................................ 11

*Kenvin v. Newburger, Loeb & Co.*,
　37 F.R.D. 473 (S.D.N.Y. 1965) ........................................ 12, 13

*Nassau County Assoc.. of Ins. Agents, Inc. v. Aetna Life & Casualty Co.*,
　497 F.2d 1151 (2d Cir. 1974) ...........................................11, 12

*Njoy, LLC v. Imiracle HK Ltd.*,
　2024 U.S. Dist. LEXIS 47676, No. CV 23-08798 TJH (SSCx) (C.D. Cal. Jan. 18, 2024) ...... 10

*North Jersey Media Grp., Inc. v. Fox News Network, LLC*,
　312 F.R.D. 111 (S.D.N.Y. 2015) ............................................ 14

*Pergo, Inc. v. Alloc, Inc.*,
　262 F. Supp. 2d 122 (S.D.N.Y. 2003) ..................................... 13

*Puricelli v. CNA Ins. Co.*,
　185 F.R.D. 139 (N.D.N.Y. 1999) ........................................... 10

*Rosa v. Cook*,
　2022 U.S. Dist. LEXIS 134055, No. 3:22-cv-00703 (SALM) (D. Conn. July 28, 2022) ........ 14

*S.E.C. v. Pignatiello,*
   1998 U.S. Dist. LEXIS 8297, No. 97 Civ. 9303 (SWK) (S.D.N.Y. June 3, 1998) .................. 14

*Spiteri v. Russo*,
   2013 U.S. Dist. LEXIS 3763, No. 12-CV-2780 (MKB) (E.D.N.Y. Jan. 9, 2013) ................... 12

*State of N.Y. v. Hendrickson Bros., Inc.*,
   840 F.2d 1065 (2d Cir. 1988) ............................................................................................... 10

*Tele-Media Co. v. Antidormi*,
   179 F.R.D. 75 (D. Conn. 1998) ............................................................................................. 12

*Wave Studio, LLC, v. General Hotel Mgmt.*,
   2017 U.S. Dist. LEXIS 34797, No. 13-CV-9239 (S.D.N.Y. March 10, 2017) ........................11

*Wilson-Phillips v. Metro. Transp. Auth.*,
   2018 U.S. Dist. LEXIS 194201, No. 18-CV-417 (VEC) (S.D.N.Y. Nov. 14, 2018) .............. 13

**Statutes**

N.Y. Pub. Health L. § 1399-ll ........................................................................................................ 3

**Rules**

Fed. R. Civ. Pro. 20 ........................................................................................................... 3, 7, 13

Fed. R. Civ. Pro. 21 ............................................................................................................. 10, 17

iv

Pursuant to Federal Rule of Civil Procedure 21, Defendants Puff Bar, Evo Brands, LLC, PVG2, LLC d/b/a Puff Bar, Ecto World LLC d/b/a Demand Vape, Magellan Technology Inc., YLSN Distribution Inc. d/b/a Happy Distro, Midwest Goods Inc. d/b/a/ Midwest Distribution Illinois, 10 Days, Inc. d/b/a Pod Juice, Safa Goods LLC, SV3, LLC d/b/a/ Mi-One Brands, Mylé Vape Inc., MVH I, Inc., Price Point Distributors Inc. d/b/a Price Point NY d/b/a/ Pricepointny.com, Weis Khwaja, Hamza Jalili, and Mohammad Jalili (collectively, "Defendants"[1]), respectfully request that this Court grant their Motion to Sever. For the reasons set forth below, Defendants are not properly joined in this action under Federal Rule of Civil Procedure 20, as the allegations against the separate defendants do not arise from the same transaction or occurrence.

## I.    INTRODUCTION

The State of New York initiated this action against sixteen independent and unrelated defendants in the e-cigarette industry based on their alleged sale and distribution of flavored vapor products in or into New York. The specific claims against Defendants vary by defendant or defendant group, as the State has also named corporate affiliates or owners for certain defendants, but ultimately boil down to claims of violations of Executive Law § 63(12), New York vapor product laws, and the federal Prevent All Cigarette Trafficking ("PACT") Act.

The Complaint joins distributors, retailers, and individuals without any allegations that Defendants engaged in concerted, joint, or collective conduct. Indeed, far from being a joint enterprise or conspiracy, many of the parties named are direct competitors. While several of the defendants may have engaged in arm's length transactions with each other from time to time, each defendant operates   independently and—other than as to a named affiliate—without any involvement of other defendants. Each defendant or defendant group operates separately in states

---

[1] Weis Khwaja, Hamza Jalili, and Mohammad Jalili are collectively referred to herein as the "Individual Defendants."

across the country, selling different vapor products through different channels to different customers at different times, while maintaining separate and distinct compliance procedures. Despite seemingly acknowledging this reality and these distinctions, the State paints with a broad brush, at times without supporting factual allegations, to suggest that each defendant is as liable as any other defendant, or even nonparties over which Defendants have no control, for alleged violations of law and other alleged harms.

But that is not the case. The claims against the defendants require defendant-by-defendant analysis and consideration of the facts particular to each defendant, even if the underlying legal concept or statute is the same. One defendant being liable for a violation does not mean that another defendant is liable, or that the damages resulting from alleged violations are the same. Such determinations will vary by defendant and require different witnesses and evidence for each defendant and each claim. The Court should grant Defendants' motion to sever because the Complaint does not meet the threshold requirements for joinder under Rule 20, and other discretionary factors—Including judicial efficiency—favor severance.

## II.    Background[2]

### A.    The Defendants

#### 1.    The Puff Defendants

Puff Bar, Evo Brands, LLC and PVG2, LLC d/b/a Puff Bar (the "Puff Defendants") are California (as to Puff Bar) and Delaware (as to Evo Brands and PVG2) corporations. Compl. ¶¶ 15-17. None of them operate any place of business or currently have business transactions with any companies located in the State of New York or which distribute products into the State of New York. Since transfer of the Puff brand to new ownership in January 2021, neither Puff Bar nor Evo

---

[2] Solely for the purpose of this motion, Defendants accept as true the well-pled allegations in the Complaint.

Brands has had *any* contact with the State of New York and PVG2, the only operating company of the *official* Puff products, has had extremely limited contacts and minimal sales into the State of New York. Tellingly, the only sale into New York identified in the Complaint is a sale of a zero-nicotine vapor product. Compl. ¶ 77. Zero nicotine vapor products are outside the scope of New York's ban on flavored vapor products, as the flavor ban applies only to vapor products "intended or reasonably expected to be used with or for the consumption of nicotine." N.Y. Pub. Health L. § 1399-ll(1-a).

None of the Puff Defendants has ever imported the Puff products into any state of the United States, let alone New York; moreover, none of the Puff Defendants has had any relationship with the other defendants in this case which would meet Rule 20's requirements that claims arise from the "same transaction, occurrence, or series of transactions or occurrences." Fed.R.Civ.P.20(a)(2)(A). As the Court noted previously, "when defendants are not connected to one another, there is no evidentiary overlap in proving what one defendant did and what another did, which is necessary for determining whether joinder of multiple defendants in a single action is proper*." Estée Lauder Cosmetics Ltd. v. Partnerships and Unincorporated Associations,* 334 F.R.D. 182 (2020)*.*

Since purchasing the Puff brand, the new owners have acted consistently to rehabilitate the brand and to distribute products in compliance with federal and state laws, including the laws of New York.  As a result, the sales of official and authentic Puff products into the State of New York have dwindled dramatically and swiftly over the past four years while, much to the dismay of the current owners, sales of counterfeit and infringing products carrying the Puff brand abound despite their bringing trademark actions against some of the infringers of the Puff brand. Accordingly, the inclusion of the Puff Defendants whose sales into New York substantially ceased years ago within

the diverse group of defendants in this case, most of which have expressed differing priorities in responding to the litigation, further underscores the huge disparity among the Defendants.

2.       *The Demand Defendants*

Magellan Technology, Inc. ("Magellan") and Ecto World LLC d/b/a Demand Vape ("Demand Vape") (collectively the "Demand Defendants") are organized under the laws of New York with their principal places of business in Buffalo, New York. Compl. ¶¶ 18-19. Magellan purchases vapor products, which Demand Vape then distributes nationwide. *See* Compl. ¶ 234. The Complaint alleges that Demand Vape is one of the largest vapor product distributors in the United States, with operations expanding in 2024. *See* Compl. ¶¶ 237-28, 250. Demand Vape sells to distributors, wholesalers, and retailers, but does not sell direct to consumers. *See* Compl. ¶ 251.

While the Complaint references partnerships between Demand Vape and other parties in the vapor product industry, including some of the co-defendants, it does not allege any partnership or joint activity in selling vapor products in New York. Moreover, while the Complaint alleges that Demand Vape sold vapor products to Midwest Goods, which is based Bensenville, Illinois, in 2018, 2022, 2023, and 2024, the Complaint does not provide any support for the conclusory assertion that Midwest "sold a substantial number of those products into New York." *See Compl.* ¶¶ 21, 349(a). Critically, Plaintiff does not allege, and cannot allege, that Demand Vape had control over any of the vapor products it sold to Midwest or any other entity after those sales were concluded, nor that Demand Vape had control or knowledge of where those vapor products were ultimately sold, including whether the sales were ultimately into New York.

3.       *YLSN Distribution Inc. d/b/a Happy Distro*

YLSN Distribution, Inc. d/b/a Happy Distro is an Arizona corporation with its principal place of business in Tucson, AZ. Compl. ¶ 20. YLSN does not sell its products to consumers, either online or in brick-and-mortar locations, and the Complaint does not allege otherwise.  Indeed, the

4

Complaint recognizes that YLSN sells only to other distributors, wholesalers, and retailers of vapor products. Id. ¶ 289. Moreover, while the Complaint identifies other defendants who purchased products from YLSN, id., e.g., ¶¶ 307, 349, 497, it does not allege that YLSN had any knowledge of, or participated in, sales by such other defendants into New York, or otherwise exerted control over its products after they were sold to those defendants.

The Complaint also alleges that YLSN and Defendant Demand Vape acted as US representatives of a non-party manufacturer of Spaceman disposable vape products at the 2024 Champs Trade Show in Las Vegas. Id. ¶¶ 257-58, 260. But the Complaint does not make allegations that YLSN and Demand Vape, in fact, worked in concert aside from both being present at the show. In any event, these promotional activities took place in Nevada, not New York. Finally, to the extent that the Complaint alleges that YLSN has engaged in "partnerships" with other manufacturers, id., e.g., ¶ 296-97, none of those entities are defendants in this case.

### 4. Midwest Goods

Midwest Goods Inc. d/b/a Midwest Distribution Inc. ("Midwest") is, as noted above, an Illinois corporation with its principal place of business in Bensenville, Illinois. Compl. ¶ 21.

While the Complaint alleges that Midwest had sales generally to New York, *see* Compl. ¶¶ 344-345, its only specific allegations relating to sales into New York relate to sales to non-parties to this litigation. *See* Compl. ¶¶ 346-347. The Complaint alleges that Midwest made purchases from the other defendants, all nationwide distributors, but offers no support for the assertion that Midwest, an Illinois corporation, sold a "substantial number of those products into New York." *See* Compl. ¶ 349. Such actions seem particularly illogical as to the purchases from defendants based *in* New York, who seemingly could sell directly to other New York-based companies. *See* Comp. ¶ 349(a), (e). Additionally, there are no allegations that any other defendant had knowledge of or participated in any sales by Midwest into New York.

5. *Pod Juice*

10 Days, Inc. d/b/a Pod Juice ("Pod Juice") is a California corporation with its principal place of business in California. Compl. ¶ 22. The Complaint alleges that Pod Juice entered into co-branded promotions with Defendant Demand Vape, *see* Compl. ¶ 375, and that Price Point offered a discount on certain Pod Juice products, *see* Compl. ¶ 126; both Demand Vape and Price Point are nationwide distributors of vapor products. The Complaint does not allege any concerted action by Pod Juice and any other defendant to offer those promotions or discounts in New York or to New York consumers, or to otherwise violate New York law. Nor are there any allegations that Pod Juice had knowledge of or participated in any sales by any defendant, or any other entity whatsoever, into New York.

While the Complaint alleges that Midwest, an Illinois corporation and nationwide distributor of vapor products, purchased vapor products from Pod Juice, there are no allegations to support the assertion that Midwest sold a "substantial number of those products into New York." *See* Compl. ¶ 349. And again, there are no allegations that Pod Juice participated in sales by Midwest into New York, or even had knowledge of any such sales.

6. *Safa Goods*

Safa Goods LLC ("Safa") is a Florida limited liability company with its principal place of business in Port Charlotte, Florida. Compl. ¶ 23. Safa is a wholesale distributor of vapor products with minimal sales into New York. To the extent Safa has conducted sales into New York, those transactions have consisted almost exclusively of wholesale sales directly to distributors, with less than 1% involving sales to retailers and none involving direct sales to individual consumers or end users. The particular sales into New York alleged in the Complaint were to Demand Vape and a non-party distributor, with a substantial majority to the non-party distributor. Compl. ¶ 398. However, there are no allegations, and there can be no allegations, that Safa controlled or even had

6

knowledge of any subsequent sales by either party, whether to distributors or retailers insider or outside of New York.

Additionally, while Plaintiff alleges that co-defendant Midwest purchased vapor products from Safa over a period of three years, Midwest is a nationwide distributor based in Illinois, not New York. *See* Compl. ¶ 349(g). The Complaint is devoid of allegations to support the conclusory allegation that Midwest then sold those vapor products into New York. Absent are any allegations that Safa knew of or participated in any sales by Midwest into New York.

Consequently, Safa's interactions with the New York market are significantly limited and indirect, distinguishing its circumstances from those of several other defendants named in this action. Indeed, Safa's limited wholesale contacts demonstrate precisely why the Defendants here do not meet Rule 20's requirement that claims arise from the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).

       7.    *Mi-One*

SV3, LLC d/b/a Mi-One Brands ("Mi-One") is an Arizona limited liability company with its principal place of business in Phoenix, Arizona. Compl. ¶ 24. While the Complaint generally alleges that Mi-One made sales into New York, *see* Compl. ¶¶ 418-419, the Complaint does not allege sales to any other defendants located in New York, or to any specific distributors, retailers, or customers in New York. The only allegation relating to any transaction between Mi-One and another defendant is a reference to purchases made by Midwest Goods, an Illinois-based nationwide distributor, from Mi-One, an Arizona-based company, over a six-year period. *See* Compl. ¶ 349(f). However, the Complaint does not provide any support for its conclusory assertion that Midwest Goods sold a "substantial number of those products into New York." *Id.* Nor is there any allegation that Mi-One had knowledge of any sales by Midwest into New York or participation in sales by Midwest into New York.

8.    *Mylé*

The Mylé Defendants (Mylé Vape Inc. and MVH I, Inc.) are New York corporations with principal places of business outside of New York; they do not reside in or have business operations in the City or State of New York. Comp., ¶¶ 25-26. Unlike many co-Defendants, the Mylé Defendants manufacture their products overseas, import them into the U.S., and sell them to distributors and wholesalers, including some in New York; the Complaint also alleges that the Mylé Defendants sell to retailers in New York, but there are no factual allegations to support this conclusion. *Id.* at ¶¶ 442, 445; *see also*, *id.*, at ¶¶ 462-463 (describing shipments to distributors and wholesalers "that ship within and to New York"). Although the Complaint makes other allegations relating to statements on Mylé's website, the promotion of Mylé products in non-parties' social-media feeds, a photograph of Mylé products being offered for sale in an unidentified Brooklyn vape shop, and other broad allegations, *id.* at ¶¶ 446-449, 453, 455-461, it does not allege that the Mylé Defendants sell their products to consumers, either online or in brick-and-mortar locations— because they do not, as Plaintiff recognizes. *Id.* at ¶¶ 93-105 (excepting Mylé Defendants from allegations relating to PACT Act).

Plaintiff does not allege, and cannot allege, that Mylé Defendants had any control over the vapor products it sold to distributors and wholesalers, including some who happened to be in New York, after those sales were concluded, nor that Mylé Defendants had control or knowledge of where or to whom those products were ultimately sold, including whether those wholesalers or distributors ultimately sold the products to retailers or consumers in New York.

9.    *Price Point*

Price Point Distributors, Inc. ("Price Point") is a New York corporation with its principal place of business in Farmingdale, located in the Eastern District of New York. Complaint ¶ 27. The Complaint alleges that Price Point's purchase and sale of vapor products from a variety of

parties, some of which are named parties in this action, supports the joinder of both Price Point *and* the Individual Defendants.

The Complaint presupposes that because Price Point has allegedly sold products "that overlap with the other Defendants' catalogues," in addition to other vapor products, Price Point is properly named as a Defendant in this action. *Id.* ¶ 468. Price Point, "following other Defendants' lead" (*id.* ¶ 495), is not the "same series of transactions" required to join Price Point as a Defendant.

The attenuated relationship between Price Point and the issues at bar in this matter is shown by Plaintiff's characterization of Price Point's alleged sales to Midwest Goods. The Complaint describes Midwest Goods as an Illinois corporation with a principal place of business located in Bensenville, Illinois, and alleges that Midwest Goods purchased ~$21,000 of vapor products from Price Point over the course of two years. *Id.* ¶¶ 21, 349(e). The Complaint then alleges that "upon information and belief, Midwest Goods then sold a substantial number of those products into New York." *Id.* Critically, the Complaint does not allege that Price Point was involved in or had any control over the products sold to its customers, including co-defendants not located in New York.

The Complaint acknowledges that Price Point stopped its operations and shut down its website operations in December 2024. *Id.* ¶ 470, 484. However, it also alleges that Price Point maintains relationships with other businesses in the vapor products industry, and so its violations continue. *Id.* ¶¶ 167, 372, 462.

The Complaint also alleges that because Individual Defendants Weis Khwaja, Hamza Jalili, and Mohammad Jalili hold various ownership interests in Price Point, liability for Price Point's alleged violations of New York law should be imputed to each of them. *Id.* ¶¶ 28-30, 479. However, the Complaint fails to allege any PACT violations by any Individual Defendant. *See id.* ¶ 104 (exempting the Individual Defendants from allegations of PACT Act noncompliance). The

allegation that the Individual Defendants have "developed personal relationships with . . . downstream customers, including individual New Yorkers" holds no water, and does not support the Individual Defendants' involvement in this case. *Id.* ¶ 494.

### B.    The State's Claims Against Defendants

The Complaint alleges nine causes of action: (1) illegality in violation of N.Y. Executive Law § 63(12); (2) fraudulent conduct in violation of N.Y. Executive Law § 63(12); (3) public nuisance; (4) violations of the PACT Act, 15 U.S.C. § 376a; (5) violations of the PACT Act, 15 U.S.C. § 376; (6) violations of 18 U.S.C. § 1716E; (7) gross negligence; (8) willful misconduct; and (9) unjust enrichment. The fourth and sixth causes of action exclude EVO Brands LLC, MVH I, Inc., and the Individual Defendants. The fifth cause of action excludes EVO Brands LLC, MVH I, Inc., and the Price Point defendants.

## III.    Argument

The Court should sever the Plaintiff's claims against each defendant, as Defendants are not properly joined in this action. Federal Rule of Civil Procedure 21 permits courts to, "on just terms, add or drop a party" or "sever any claim against a party." "The decision whether to grant a severance motion is committed to the sound discretion of the trial court." *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988); *see also Njoy, LLC v. Imiracle HK Ltd.*, No. CV 23-08798 TJH (SSCx), 2024 U.S. Dist. LEXIS 47676, at *5 (C.D. Cal. Jan. 18, 2024) (*sua sponte* severing defendants and claims in case in which plaintiff had filed suit against 51 vapor product distributor and retailer defendants for violations of the Lanham Act, California False Advertising Law, PACT Act, and California Unfair Competition Law). Although Rule 21 "is silent with regard to the grounds for misjoinder . . . it is well-settled that parties are misjoined when the preconditions of permissive joinder, set forth in Rule 20(a), have not been satisfied." *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139 (N.D.N.Y. 1999).

Under Federal Rule of Civil Procedure 20(a)(2), parties "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Both subparts (A) and (B) are required. *See Erausquin v. Notz, Stucki Mgmt. (Berm.)*, 806 F. Supp. 2d 712, 722 (S.D.N.Y. 2011) (noting that this Court is not "required to deny Defendants' severance motion merely because there exists some common question of law and fact"); *Wave Studio, LLC, v. General Hotel Mgmt.*, 2017 U.S. Dist. LEXIS 34797, *27, No. 13-CV-9239 (S.D.N.Y. March 10, 2017) ("[T]he Second Circuit 'has never required claims to be litigated together on that [common question] basis alone.'") (quoting *Erausquin*, 806 F. Supp. 2d 722). Under Rule 21, the appropriate remedy for misjoinder of parties is severance of the parties and pertinent claims.

## A.    The Claims Do Not Arise Out of the Same Transaction or Occurrence

The allegations against the sixteen Defendants in this case do not arise from the same transaction or occurrence. "What will constitute the same transaction or occurrence under the first prong of rule 20(a) is approached on a case-by-case basis." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 821, 826 (S.D.N.Y. 2008). While "[t]here is no rigid rule as to what constitutes the same series of transactions or occurrences for the purpose of joinder under Rule 20," *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011), courts in the Second Circuit have repeatedly held that severance is proper where there is no allegation that defendants conspired or acted jointly. *See e.g.*, *Nassau County Assoc.. of Ins. Agents, Inc. v. Aetna Life & Casualty Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974); (holding that 164 insurance companies were misjoined in an antitrust class action because there was no allegation of concerted conduct); *Arista Records LLC v. Doe*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) ("The 'same transaction' requirement means that there must be some allegation that the joined defendants 'conspired or acted jointly.'")

11

(quoting *Tele-Media Co. v. Antidormi*, 179 F.R.D. 75, 76 (D. Conn. 1998)); *Baltas v. Quiroz*, 2024

U.S. Dist. LEXIS 185960, *4, No. 3:24cv1277(VAB) (D. Conn. Oct. 11, 2024) (same); *see also*

*Spiteri v. Russo*, 2013 U.S. Dist. LEXIS 3763, No. 12-CV-2780 (MKB) (E.D.N.Y. Jan. 9, 2013)

(denying plaintiff's motion to amend to add new defendant as potential new defendant acted

independently in republishing information taken from existing defendant's website and no

allegation existed that it conspired with the existing defendant to "extort" the plaintiff).

Nowhere in the entirety of its 192-page Complaint, does Plaintiff allege that Defendants

conspired or acted jointly. For this straightforward reason, Plaintiffs have not satisfied the same

transaction or occurrence requirement for joinder under Rule 20. *See Tele-Media Co.*, 179 F.R.D.

at 76 ("In the absence of any claim that the defendants conspired or acted jointly, the same

transaction requirement of Rule 20, even when read as broadly as possible, is plainly not

satisfied.").

The fact that Defendants are alleged to have violated some of the same federal, state, or

local statutes makes no difference to the same transaction or occurrence analysis because they are

alleged to have done so independently. The Second Circuit succinctly illustrated this point in

*Nassau County Association of Insurance Agents, Inc.*:

> [P]laintiff joined four stockholders, who, he alleged, had extended credit to him in
> violation of Federal Reserve Board Regulations and the Securities Exchange Act.
> The wrongdoing of each defendant was identical, but the loans and securities
> involved and the dates on which the transactions were entered into differed. The
> court held that defendants had been misjoined since plaintiff had merely "alleged
> against each of the four defendants distinct and unrelated acts which happened to
> involve violations of the same statutory duty" and the "operative facts" of each
> transaction were unrelated to those of any other.

497 F.2d at 1154 (discussing facts and disposition of *Kenvin v. Newburger, Loeb & Co.*, 37 F.R.D.

473 (S.D.N.Y. 1965)). Equally here, the sixteen Defendants are misjoined because Plaintiff has

merely alleged that they "committed distinct and unrelated acts that happened to involve violations of [some of] the same statutory dut[ies]." *Id.*

Similarly, the Southern District of New York and other federal courts have held that joinder is improper based simply on allegations that different defendants – without a "cooperative or collusive relationship" – infringed on the same patent by selling their respective infringing products. *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) ("[T]he fact that two parties may manufacture or sell similar products, and that these sales or products may have infringed the identical patent owned by the plaintiffs[,] is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)."); *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012) ("[C]laims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts."); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620 (N.D. Ill. 1998) (finding joinder of defendant companies selling different products in competition with each other impermissible, notwithstanding alleged infringement of same patents). Whether in the context of patent infringement or another statutory violation, allegations of defendants' independent conduct do not satisfy the same transaction or occurrence requirement of Rule 20.

### B.    The Claims Do Not Allege Common Questions of Law or Fact

Plaintiff likewise cannot establish the second prong of Rule 20(a)(2) because no "question of law or fact common to all defendants will arise in the action." "[T]he overlap in questions of law or fact must be 'substantial' in order for joinder to be appropriate." *Wilson-Phillips v. Metro. Transp. Auth.*, No. 18-CV-417 (VEC), 2018 U.S. Dist. LEXIS 194201, at *5 (S.D.N.Y. Nov. 14, 2018) (severing race discrimination claims where "each Plaintiff's claims [would] require a separate, case-specific analysis, accordingly the claims [were] not so 'logically connected' that

13

they constitute[d] the same transaction or occurrence under Rule 20."). "The mere fact that the same statute may be at issue in two claims is insufficient to render them sufficiently related so as to support joinder." *Rosa v. Cook*, No. 3:22-cv-00703 (SALM), 2022 U.S. Dist. LEXIS 134055, at *8 (D. Conn. July 28, 2022). "Where, as here, plaintiff['s] claims under the same statutory framework arise from different circumstances and would require separate analyses, they are not logically related." *North Jersey Media Grp., Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 115 (S.D.N.Y. 2015) (granting severance where there were common issues of law arising under the Copyright Act but based on "different facts, including different copyright works, created on different media, infringed upon at different times, by different parties, within different media channels.") (citing *S.E.C. v. Pignatiello,* No. 97 Civ. 9303 (SWK), 1998 U.S. Dist. LEXIS 8297, *9 (S.D.N.Y. June 3, 1998) (granting severance of two claims asserting securities fraud based on separate fraud schemes where each claim involved different co-defendants, different common stock, a different contract, different start dates, and a different method of compensating the defendant, where the only similarity was that both schemes were organized by the same defendant and aided and abetted by the same individuals)).

Here, any overlap of law or fact is not "substantial" enough to warrant joinder, and the defendants and claims should be severed. First, Plaintiff is not alleging the same claims against each defendant, as Plaintiff alleges some claims against all defendants but excludes certain defendants from other claims. *See supra* Section II.B. This may be further altered depending on the outcome of each defendant's potential motion to dismiss or for summary judgment after discovery. Second, and significantly, even for those claims that are against all defendants, "[w]hile the legal concepts at issue may overlap, the relevant facts do not." *North Jersey Media Grp.*, 312 F.R.D. at 116.

Each of the separate defendants or defendant groups are separate businesses located across the country with varying roles in the vapor product industry. *See supra* Section II.A. Each defendant group has its own business or businesses, locations, operations, customers, and sales into or involvement with the State of New York. *Id.* Plaintiff will need to prove each claim against each defendant independently based on the facts particular to that defendant. Simply because Defendants all sell vapor products or are alleged to have sold vapor products to customers in New York does not mean the claims against them involve common issues of fact. For example, proving a violation of the PACT Act by one defendant based on the facts specific to that defendant will not establish any other defendant's violation. Proving such a violation would require Plaintiff to establish as to each individual defendant that it specifically failed to comply with the PACT Act— Plaintiff could not rely on the violations of one defendant to establish the violations of another defendant. That determination will require a defendant-by-defendant analysis of each defendant's actions or omissions in complying with the PACT. This is the case for all of Plaintiff's claims; each claim will require defendant-specific proof to establish that defendant's liability.

Accordingly, because the Complaint does not allege common questions of law or fact, joinder is improper and Court should sever the Defendants and the claims against them.

**C.     The Other Discretionary Factors Weigh In Favor of Severing the Defendants and Claims**

Finally, for the avoidance of doubt, other relevant considerations beyond those in Fed. R. Civ. P. 20(a) also support severance. In the Second Circuit, these considerations include "(1) whether settlement of the claims or judicial economy would be facilitated; (2) whether prejudice would be avoided if severance were granted; and (3) whether different witnesses and documentary proof are required for the separate claims." *Crown Cork & Seal Co., Inc. Master Retirement Trust v. Credit Suisse First Boston Corp.*, 288 F.R.D. 331, 333 (S.D.N.Y. 2013); *e.g.*, *D'Angelis v. Bank*

*of Am., N.A.*, No. 13-CV-5472(JS)(AKT), 2014 U.S. Dist. LEXIS 6087 (E.D.N.Y. Jan. 16, 2014) (same); *Erausquin v. Notz, Stucki Mgmg. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 72 (S.D.N.Y. 2011) (same).

Defendants are unrelated distributors, wholesalers, retailers, and individuals. They carry different product lines and sell them in different quantities, to different buyers, in different locations, over different periods of time, at different prices. The only aspect of this litigation that unifies Defendants is that Plaintiff alleges that some of their products were allegedly sold in or into New York in violation of some of the same statutes. As discussed, each claim alleged against each defendant will require proof specific to each defendant. This will necessitate different witnesses and different documentary proof as to each defendant. *See Jem Accessories v. JVCKENWOOD USA Corp.*, No. 11:20-cv-4984 (GHW), 2021 U.S. Dist. LEXIS 33687, at *13 (S.D.N.Y. Feb. 22, 2021) ("Because defendants are entirely unrelated entities, and are not alleged to have coordinated or conspired . . . the claims against them will inevitably involve different witnesses and evidence[.]") This will include potential employee witnesses for each defendant, the number of whom will vary by defendant, as well as documentary evidence that will vary in type and volume for each defendant, including each defendant's sales, shipping, purchase, PACT ACT-related, and marketing records. The defendant-specific nature of these witnesses and evidence weighs in favor of severing the Defendants and the claims as to each defendant.

Severance will also promote judicial economy by reducing the likelihood of disputes requiring Court intervention. The presence of 16 dissimilarly situated defendants, each with their own priorities, objectives, and objections, and with different claims against each defendant, lends itself to the increased likelihood of disputes over matters such as the scope of discovery as well as aspects as basic as scheduling of depositions. Likewise, at trial, prosecuting and defending all 16

unique defendants, each with its own witnesses and evidence, is likely to be difficult to manage, confusing to the jury, and adverse to judicial economy. A further potential complication is that continued joinder is likely to require the unrelated Defendants to share confidential business information in discovery not just with the Plaintiff but with each other. While the parties would endeavor to resolve such issues without judicial intervention, disputes over access to certain confidential business information such as customers and pricing are likely to arise, if not during discovery, then at trial. Likewise, because Defendants are so dissimilarly situated, any hope of reaching a global settlement is all but extinguished as their needs, financial capacity, and interests are not aligned.

Severing the Defendants and claims will allow each defendant to pursue defense and resolution of this matter based on its own interests and objectives, thereby making decisions in its own best interest without consideration of the other defendants' positions. This will allow for more streamlined and efficient discovery and trial, and may also increase the likelihood of settlement. It also will help avoid potential prejudice resulting from confusion of the jury at trial—a confusion that could otherwise result in defendants that are not liable being found liable or perceived more negatively by a jury because of the unrelated actions and conduct of another defendant over which the first defendant has no control.

These considerations provide ample "just terms" for severance under Fed. R. Civ. P. 21.

## IV.    Conclusion

Plaintiff has sued a slew of separately-situated defendants for a differing variety of statutory and common-law claims. Plaintiff doesn't allege that the Defendants acted in concert or conspired to break the law. Rather, the only "glue" holding these disparate entities and individuals together is that they are in the vape industry—albeit at different points in the manufacture, import, distribution, and sale of vape products. That "glue" isn't enough to join them in one action and, for

the foregoing reasons, Defendants jointly request that the Court sever the Defendants and the claims against each of them into separate lawsuits pursuant to Fed. R. Civ. P. 21.

Respectfully submitted,

THOMPSON HINE LLP

Dated: April 25, 2025

By: _____/s/ Eric N. Heyer_____
Eric N. Heyer (admitted *pro hac vice*)
Joseph A. Smith (admitted *pro hac vice*)
Anna Stressenger (admitted *pro hac vice*)
Krupa Patel
Ryan D. Callinan
1919 M Street, N.W., Suite 700
Washington, DC 20036
Phone: 202.331.8800
Fax: 202.331.8330
eric.heyer@thompsonhine.com
joe.smith@thompsonhine.com
anna.stressenger@thompsonhine.com
krupa.patel@thompsonhine.com
ryan.callinan@thompsonhine.com

*Counsel for Defendants SV3, LLC (d/b/a Mi-One Brands), and Midwest Goods Inc. (d/b/a Midwest Distribution Illinois)*
*Co-Counsel for 10 Days, Inc. (d/b/a Pod Juice), and Safa Goods LLC*
*Co-Counsel for Defendants Magellan Technology, Inc., Ecto World, LLC (d/b/a Demand Vape)*

BUSCHEL GIBBONS, P.A.

By: ____/s/ Robert Buschel_____
Robert C. Buschel
501 East Las Olas Boulevard
Third Floor
Fort Lauderdale, Florida 33301
Phone: (954) 530-5748 (direct)
Email: Buschel@BGlaw-pa.com

18

COHEN & MCMULLEN, P.A.

By: ____/s/ Bradford M. Cohen, Esq._____
    Bradford M. Cohen, Esq.
    Michael J. McMullen, Esq.
    1132 SE 3rd Avenue
    Fort Lauderdale, Florida 33316
    Telephone: (954) 523-7774
    Facsimile: (954) 523-2656
    Email: michael@floridajusticefirm.com
    Secondary: service@floridajusticefirm.com

ZOE ARON LAW, P.C.

By: ____/s/ Zoe Aron_____
    Zoe Aron
    6380 Wilshire Boulevard, Suite 1606
    Los Angeles, California 90048
    Telephone: (310) 779-5843
    Email: ZoeAronESQ@gmail.com

*Co-Counsel for Defendants Magellan Technology, Inc., Ecto World, LLC (d/b/a Demand Vape)*

SHEPPARD MULLIN RICHTER
& HAMPTON LLP

By: ____/s/ Allison Catherine Wong_____
    Allison Catherine Wong
    Kazim Naqvi
    350 South Grand Avenue
    40th Floor
    Los Angeles, California 90071
    Phone: 213-617-4299
    acwong@sheppardmullin.com
    knaqvi@sheppardmullin.com

    Damani C. Sims
    30 Rockefeller Plaza
    New York, New York 10112
    Phone: 212-653-8700
    dsims@sheppardmullin.com

*Co-Counsel for 10 Days, Inc. (d/b/a Pod Juice)*

19

PETERS BROVNER LLP

By: ____/s/ Lesley Brovner_____
    Lesley Brovner
    Mark Peters
    Madison Kucker
    139 Fulton Street – Suite 132
    New York, New York 10038
    Phone: 917-639-3270
    lbrovner@petersbrovner.com
    mpeters@petersbrovner.com
    mkucker@petersbrovner.com

    Madison A. Kucker
    Peters Brovner LLP
    139 Fulton St. Suite 132
    New York, New York 10038
    Phone: 516-459-7112
    mkucker@petersbrovner.com

    *Co-Counsel for Safa Goods LLC*

ZANICORN LEGAL PLLC

By: */s/ Mary G. Bielaska*_____
    Mary G. Bielaska
    845 Third Avenue
    6th Floor
    New York, NY 10022
    Phone: 858-761-2197
    Fax: 858-886-7911
    mary.bielaska@zanicorn.com

    *Counsel for Puff Bar, Evo Brands, LLC, and PVG2, LLC (d/b/a Puff Bar)*

BOCHNER PLLC

By: */s/ Erik Dykema*_____
    Andrew Bochner
    Erik Dykema
    Serge Krimnus
    Meredith Lloyd (*pro hac vice*)
    1040 Avenue of the Americas, 15th Floor
    New York, NY 10018
    Phone: 646-971-0685

erik@bochner.law

*Counsel for Defendants YLSN Distribution, Inc.,
Price Point Distributors, Inc., Hamza Jalili, Weis
Khwaja, and Mohammed Jalili*

KELLER AND HECKMAN LLP

By: /s/Eric P. Gotting
    Eric P. Gotting
    1001 G Street, NW, Suite 500W
    Washington, D.C. 2001
    Phone: 202-434-4100
    gotting@khlaw.com

*Co-Counsel for Defendants YLSN Distribution, Inc.,
d/b/a Happy Distro*

BUCHANAN INGERSOLL & ROONEY P.C.

By: /s/ Christopher James Dalton
    Christopher James Dalton
    550 Broad Street, Ste. 810
    Newark, New Jersey 07102-4582
    Phone: (973) 273 - 9800
    Fax: (973) 273-9430
    christopher.dalton@bipc.com

*Counsel for Myle Vape Inc. and MVH I, Inc.*

## **WORD COUNT CERTIFICATE**

I hereby certify that the foregoing Memorandum and Points of Authorities complies with the word count limitation set forth in Local Rule 7.1(c). The word count feature found in Microsoft Word reports that the foregoing contains 5,583 words, excluding the items exempted under Individual Rules & Practices in Civil Matters § B(2).

           /s/ Eric N. Heyer
           Eric N. Heyer

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2025, I caused the foregoing to be electronically filed with the Clerk via the Court's ECM/ECF system and thereby electronically served on all counsel of record.

    /s/ Eric N. Heyer    
Eric N. Heyer
