

**Office of the New York State Attorney General**

**Letitia James Attorney General**

October 2, 2025

**VIA ECF**
Honorable Margaret M. Garnett
United States District Court for the
Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

    Re:    *The People of the State of New York v. Puff Bar, et al.*, Case No. 25-CV-01445

Dear Judge Garnett:

    This Office represents Plaintiff the People of the State of New York (the "State"). We write to respectfully submit the legal and factual basis supporting our previously proposed confidentiality and protective order, which is appropriately conformed to the case at bar and best positioned to allow for the efficient administration of this case. ECF No. 111-1 (the "State's Proposed Conf. Order").

    Following the September 25 conference with the Court, the parties met and conferred to discuss the two most significant competing issues in their respectively proposed confidentiality and protective orders, *see id.,* ECF No. 112-1 ("Defendants' PPO"), in an effort to reach agreement and submit a joint proposal. Unfortunately, the parties could not reach agreement. For that reason and as described more fully below, it is the State's position that this Court should adopt the State's Proposed Conf. Order.

    In the alternative to its original submission, the State respectfully submits herein a revised proposed confidentiality and protective order (the "State's Alternative Conf. Order"), which (i) incorporates Defendants' "Highly Confidential – Attorneys' Eyes Only" ("HC-AEO") designation tier in a more workable way, and (ii) provides limited permission for the State to share confidential documents with law enforcement. Though the State submits that its State's Proposed Conf. Order best satisfies Rule 26(c)'s purpose of protecting a party from "annoyance, embarrassment, oppression, or undue burden or expense," it nevertheless offered the State's Alternative Conf. Order to Defendants this week as a compromise on the two significant issues of disagreement. Though it was rejected by Defendants, the State respectfully submits that it is still closer aligned to the Rule 26(c) principles than Defendants' competing submission, and therefore submits it to the Court for its consideration as an alternative.[1]

---

[1] The State has attached a clean version of the State's Alternative Conf. Order and a copy that is redlined against its original submission (ECF No. 111-1).

Hon. Margaret M. Garnett
Page 2

### 1. **Defendants' "HC-AEO" Designation Is Unnecessary and Unworkable.**

The State objects to Defendants' HC-AEO designation for two reasons: (1) their proposed definition is so overbroad that it is completely indistinguishable from the "Confidential" designation; and (2) it will frustrate the State's ability to efficiently and fairly conduct discovery, including hindering depositions and the preparation of consolidated expert reports.

First, materials fitting Defendants' threshold for HC-AEO are already protected by the parties' agreed upon designation of "Confidential," defined as "non-public information that contains confidential financial information, or that contains commercially, competitively, or otherwise sensitive information subject to protection under Rule 26(c) ..." *See* ECF Nos. 111-1, ¶2; 112-1, ¶2. Defendants define HC-AEO as "Confidential Information *involving* trade secrets or commercial information which if disclosed would cause substantial injury to the competitive position of the producing party . . . ***including, but not limited to*** sales, purchase, or pricing data, and customer, vendor, or supplier information, and product design and ingredient information not subject to public disclosure." ECF No. 112-1, ¶5 (emphasis added).[2] If Defendants' definition is accepted, just about any and all material in their possession, custody, or control can be deemed "involving" trade secrets or commercial information because it will all relate to the core of their respective businesses.

Second, Defendants' HC-AEO designation will prevent the State from efficiently conducting, among other things, depositions. The parties agree generally that deposition transcripts should be presumed confidential for fifteen business days after receipt of the transcript, ECF Nos. 111-1, ¶10; 112-1, ¶14. However, Defendants propose escalating that presumption to HC-AEO for that entire grace period.[3] ECF No. 112-1, ¶14. The State anticipates taking multiple depositions a week, but under Defendants' proposal it will not be able to use information gathered from one deposition in other examinations efficiently, even when no one has applied HC-AEO. For instance, Defendant Midwest Goods purchased Flavored E-Cigarettes from Defendants Demand Vape, YLSN d/b/a Happy Distro, MYLÉ, 10 Days d/b/a Pod Juice, Price Point, SV3, and Safa Goods. *See* ECF No. 1, ¶349. Under Defendants' original proposal, Midwest Goods' deposition testimony on these purchases will be presumptively HC-AEO for two weeks, and the State will be precluded from using that information in the deposition of any other implicated Defendants concerning those same purchases without leave of Court.

Similarly, Defendants' HC-AEO tier will frustrate the State's ability to have consolidated expert reports without court intervention. The State anticipates experts on the topics of marketing, health, and possibly other topics which overlap between several or all Defendants.

Finally, this tier is unnecessary given that both Rule 26(c) and the State's Proposed Conf. Order leave room for the parties to seek heightened protections and bespoke solutions as becomes necessary. *See* ECF No. 111-1, ¶11. Carrying the example above, a category of Midwest documents and testimony may be deemed disclosable to Defendants Demand Vape, YLSN, MYLÉ, 10 Days,

---

[2] Although Defendants previewed to the State a slightly narrower definition that adopts some of the State's proposed definition of "HC-AEO" material, it remained overly broad and too subjective for practical application.

[3] Similarly, Defendants previewed to the State that they may agree to a shorter default designation period of 3 days, but their proposal remained too long to relieve the State's concerns.

Hon. Margaret M. Garnett
Page 3

Price Point, SV3, and/or Safa Goods, but no other Defendant. By creating a blanket HC-AEO tier of confidentiality, the Court will likely need to resolve disputes over the broad application of that designation, and still need to apply bespoke confidentiality over specific materials.

### 2. The Protective Order Should Not Constrain the State's Law Enforcement and Regulatory Obligations.

Defendants' PPO bars the State from sharing documents designated as "Confidential" with law enforcement and government or other regulatory agencies. The party seeking a protective order bears the burden of establishing the "requisite good cause" under Rule 26(c). *New York v. Grand River Enterprises Six Nations, Ltd.*, No. 14-CV-910, 2020 WL 3989337, at *1 (W.D.N.Y. July 15, 2020) (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004)). Good cause exists when the requesting party "shows that disclosure will result in a clearly defined specific and serious injury." *Grand River*, 2020 WL 3989337, at *1 (emphasis in original) (quoting *Pitsiladi v. Guerrero*, No. 07-CV-6605, 2008 WL 5454234, at *2 (S.D.N.Y. Dec. 30, 2008)); *see also Cerco Bridge Loans 6 LLC v. Schenker*, No. 23-CV-11093, 2024 WL 3319509, at *1 (S.D.N.Y. June 13, 2024) (same). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Pitsiladi*, 2008 WL 5454234, at *2 (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986)). There exists no good cause basis for prohibiting the State from carrying out its law enforcement obligations.

As another court in this Circuit explained, the fact "[t]hat information obtained in discovery might reveal other wrongdoing for which [defendant] could be held liable does not constitute the good cause required by Rule 26(c). Indeed, it would be profoundly unjust for the Court to require [a government agency] to turn a blind eye to information properly obtained through discovery while litigating a case under its statutory authority to act in the public interest to remedy unlawful [conduct]." *EEOC v. United Parcel Service, Inc.*, No. 15-CV-4141, 2018 WL 1402240, at *5 (E.D.N.Y. Mar. 5, 2018). In fact, the PACT Act specifically provides for information sharing between a state, through its attorney general, and federal prosecutors "who shall take appropriate action to enforce" the PACT Act. 15 U.S.C. § 378(c)(2).

The court in *Grand River* accepted the State's proposed protective order with a similar law enforcement "carve out." Like Defendants here, the defendant cigarette manufacturers in *Grand River* wished to "maintain the current balance between the existing instruments that regulators and law enforcement agencies possess and Defendants' entitlement to due process." 2020 WL 3989337, at *2. The court found that those defendants' "rhetorical assertions" failed to "equate to any 'clearly defined, specific and serious injury' …that … [the State's] putative dissemination, if any, could conceivably inflict on Defendants sufficient actual harm to constitute good cause for Defendants' proposed limitation." *Id* (internal citations omitted).

The New York State Attorney General is the State's chief legal officer and "the head … of the department of law." N.Y. Const., art. V, § 4. As such, the Attorney General's duty is to "[p]rosecute and defend all actions and proceedings in which the state is interested …" N.Y. Exec. Law § 63(1). As a matter of course, the New York State Office of the Attorney General regularly shares information with other law enforcement authorities when it comes upon information relevant to those jurisdictions. Coordination and cooperation between governmental agencies are

Hon. Margaret M. Garnett
Page 4

routine and standard law enforcement practices. Sharing affords regulators the ability to coordinate their efforts to leverage limited prosecutorial resources in the most effective manner to protect the public and allows for meaningful consultation and cooperation between regulators. The ability to share information is especially important here where the violations occur across state borders by multiple actors. Defendants' law enforcement exclusion threatens this system of cooperation. Restraints on cooperation lead to delayed enforcement or no enforcement altogether.

For these reasons, the Court should reject Defendants' PPO, and instead adopt the State's Proposed Conf. Order, which provides adequate safeguards for any legitimate privacy concerns Defendants might have, while allowing the State to both protect its own residents and cooperate with other state and federal agencies as they seek to do the same in their respective jurisdictions.

Alternatively, the State has offered to Defendants the attached State's Alternative Conf. Order that (i) narrows their HC-AEO category and its application, including by requiring them to provide an accompanying explanation for certain materials designated HC-AEO to streamline any disputes over potential over-designation, and (ii) meaningfully limits, but does not prohibit, the State's ability to share materials with other law enforcement. While the State's Alternative Conf. Order proposes edits to its original submission that the State maintains are unnecessary, it respectfully submits that it better achieves Defendants' goals of creating an HC-AEO tier of confidentiality (e.g., narrowing their definition and applying the presumption of that designation on deposition transcripts for only 24 hours), and also furnishing them with notice when the State has received a request for information by a non-New York law enforcement or government entity.

We thank the Court for its attention to this matter.

Respectfully submitted,

/s/ Joy K. Mele
Joy K. Mele
Assistant Attorney General

Encl.