

**Office of the New York State
Attorney General**

**Letitia James
Attorney General**

March 30, 2026

Hon. Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square, Room 2102
New York, New York 10007

     *Re: State of New York v. Puff Bar, et al., Case No. 25-cv-01445 (MMG)*

Dear Judge Garnett:

     This Office represents Plaintiff the People of the State of New York (the "State") in the above-referenced litigation. We write pursuant to Section II(A)(6) of Your Honor's Individual Rules and Practices and Local Civil Rule 37.2 to respectfully request an order compelling Defendants to comply with their discovery obligations. We are almost 3 months passed the January 7th initial production date (extended at Defendants' request), and Defendants have refused to produce whole categories of documents and communications relevant to the State's claims, including its public nuisance and Executive Law § 63(12) claims, on the ground that such requests are "unrelated to New York."

     The State met with Defendants in January and February concerning the deficiencies in their productions.[1] Despite these efforts and further communications, the parties have been unable to resolve their disputes. The State informed Defendants on March 27, 2026 that it believed the parties were at an impasse, and would be seeking relief from the Court.

     **Background -** The State's requests for documents, served on October 27, 2025, seek broad categories of information, relating to the State's claims. In essence, there are two main categories of requests for which Defendants are refusing to produce any discovery: (i) all communications generally - regardless of the substance, including with supply chain manufacturers, importers, customs brokers, trademark holders, delivery carriers, and other distributors with whom they purchase from and to whom they sell their products; and (ii) requests that seek upstream information outside of New York State's geographical area concerning Defendants' marketing practices, distribution chain, business profits, corporate policies, competition information, and grievances. The requests bear directly on the State's claims and relevant issues such as Defendants' knowledge that Flavored E-Cigarettes (as defined in the Complaint) are illegal nationally and in New York; misrepresentations concerning the benefits of their products; marketing to youth; control of the market and supply; and their role in the public nuisance alleged in the State's complaint.

     Defendants object to and refuse to produce documents and communications responsive to the

---

[1] *See* attached Exhibit A detailing the dates of the State's conferrals with Defendants.

above-referenced categories of documents on the purported basis that the documents and communications sought are not relevant or proportional to the State's claims, and/or are unduly burdensome, and demand some version of a "New York Only" limitation on the State's requests.[2]

Each Defendant has either produced no communications or an inconsequential number, including in response to requests to which they raise no objection. YLSN represented during their conferral that it would be producing texts. However, at the time, it had not even collected employee phones to gather potentially responsive texts or messages. Price Point Defendants advised without explanation that it would be "weeks" before they would produce any communications. They have yet to produce a single communication. Mylé Defendants have similarly produced no communications, and as of February 26th, had not even conducted a first pass document review. Defendants' refusal to produce communications is especially alarming given that all Defendants, except the Puff Defendants, identified email, texts and/or messaging applications such as WhatsApp, WeChat, and Slack as methods of communication.[3]

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." F.R.C.P. 26(b)(1). Documents "at least minimally relevant to the parties' claims" fall within Rule 26(b)(1). *Malherbe v. Oscar Gruss & Son, Inc.*, 2024 WL 3299794, at *2 (S.D.N.Y. June 12, 2024). "Once the party seeking discovery demonstrates relevance, the burden shifts to the opposing party 'to justify curtailing discovery.'" *Mandarin Oriental, Inc. v. HDI Glob. Ins. Co.*, 2025 WL 3101234, at *4 (S.D.N.Y. Nov. 6, 2025)(internal citations omitted).

**1. Upstream Documents/Communications Are Relevant to the PACT Act and Public Nuisance Claims -** The State's claims are not limited to Defendants' illegal sales and shipments into and within New York. The State also claims that it is grappling with a public health crisis among its youth caused by Flavored E-Cigarettes – a public health crisis that is attributable to each Defendant's illegal and/or fraudulent commercial and marketing conduct establishing an industry for Flavored E-Cigarettes, which, among other things, has targeted underage users and created broad misapprehensions about the legality and safety of the Flavored E-Cigarettes that they market *nationally* and distribute into and within New York. Defendants' conduct includes failing to address underage sales; falsely labeling products (e.g., as "battery chargers" or smoke detectors"); spreading misinformation regarding the benefits of e-cigarettes; creating a market for certain brands by entering into exclusive master distributor agreements; developing child-appealing imagery and flavors; offering discounts and swag giveaways; and intentionally obfuscating the illegality of their products. *See* ECF No. 1.

Defendants' "New York sales only" categorical limitation improperly excludes documents and communications relevant to the State's public nuisance and PACT Act claims, which no Defendant moved to dismiss. Documents and communications concerning distribution networks and strategies and supply-chain relationships—all of which necessarily extend beyond New York's boundaries—are directly relevant to (i) determining how Defendants structured their distribution channels; (ii) whether their practices resulted in products being shipped into and from New York in violation of the PACT Act; and (iii) the scope of Defendants' participation in the alleged public nuisance.[4]

Furthermore, documents and communications not geographically limited by state, such as purchase orders, manufacturer/importer/trademark/ distributor/marketing agreements; policies,

---

[2] *See* attached Exhibit B identifying the requests to which Defendants object.

[3] Puff Defendants failed to identify communication methods.

[4] For instance, Defendant Midwest Goods purchased Flavored E-Cigarettes from Defendants Demand Vape, YLSN, Mylé, 10 Days, Price Point, SV3, and Safa, and upon information and belief, sold and shipped products purchased from these Defendants to New York distributors, wholesalers, and retail customers. ECF No. 1, ¶349.

procedures, representations (via communications with trade/industry players; complaints/grievances received; responses to FDA warning letters; requests/inquiries from government/regulatory agencies and responses thereto) concerning the illegality, safety, benefits and potential harms of Flavored E-Cigarettes,[5] and meetings with suppliers/manufacturers, are all potentially relevant to the State's claims. Defendants failed to identify any industry or internal business practice that segregates upstream conduct by downstream state-specific sales.[6]

**2. Defendants Fail to Demonstrate Any Undue Burden -** Defendants' purported willingness to meet and confer in narrowing the States' requests have been merely performative. The State requested information necessary to evaluate Defendants' purported proportionality and burden objections and the reasonableness of their search efforts, including identification of custodians, search terms, data sources searched, and hit counts. Instead, Defendants had not yet even begun to identify custodians, run search terms for responsive materials, or even had a basic understanding of documents within their possession, custody and control potentially responsive to the State's requests.[7] *See Black Love Resists in the Rust v. City of Buffalo*, 334 F.R.D. 23, 28–29 (W.D.N.Y. 2019) (burden objection rejected where defendants failed to quantify the number of documents involved or the time and resources required to conduct the search).

Safa refused to provide hit counts claiming they are "not feasible (or informative)." Midwest Goods, 10 Days, Demand Vape, Magellan, and SV3 represented they were working to develop search terms, and advised on February 13th that they would "follow up next week regarding search terms." They have yet to provide any search terms. Midwest Goods and 10 Days have produced no communications. Demand Vape, Magellan, and SV3 have produced just a handful of communications. YLSN similarly represented that they were "in the process of developing a search term list" that would be shared with the State. The State has yet to receive a list.

**3. No Legitimate Basis Exists for Defendants' Refusal to Share Discovery Produced to the State with Each Other -** Defendants have failed to produce discovery to each other citing confidentiality concerns despite the Protective Order and the notable overlap of counsel for multiple parties. Defendants have also refused to permit the State to re-produce relevant investigatory documents to other Defendants. Any concerns Defendants have disclosing trade secrets or sensitive commercial information are addressed in the Protective Order. ECF No. 119, ¶5. The State is concerned that Defendants' position restricting the open exchange of discovery will hamstring the State's use of discovery material in depositions, during motion practice, and at trial.

**Conclusion** - For the forgoing reasons, the State respectfully requests an order: (1) overruling Defendants' objections to the State's requests; and (2) compelling Defendants to (a) produce within 2 weeks to all parties all outstanding discovery responsive to the State's requests, (b)) produce to each other all discovery produced to the State, and (c) produce to all parties documents provided to the State in response to the investigatory subpoenas. Additionally, given the limited nature of Defendants' productions to date, the State is unable to proceed with noticed depositions and respectfully requests a 45-day extension of the deadlines set forth in the modified scheduling order. ECF No. 129.

---

[5] A March 28, 2023 WhatsApp chat to hundreds of industry stakeholders, including Safa, Mylé, and SV3 discussed New York's flavor ban but explicitly theorized that the risk of violating the ban was passed on fully to retailers. *See* ECF No. 1, ¶172.

[6] Safa has advised that its procurement records and inventory processes are not maintained in a way that tracks which purchased products will later be offered for sale or sold into any particular state, including New York.

[7] Demand Defendants reported that a preliminary test search of email addresses for New York customers resulted in approximately 1.4 million hits, but had not confirmed the search parameters used, were unsure how many of the results were attachments or signature block images, and admitted that the individual that ran the search said the number of hits was lower.

Respectfully submitted,

/s/ Joy K. Mele

Joy K. Mele
Assistant Attorney General
Health Care Bureau
Joy.mele@ag.ny.gov
(212) 416-8542

Encl.

Cc:     All Counsel of Record (*via* ECF)
        Counsel of Record for City of New York,
            Related Case No. 25-cv-2850 (MMG) (*via* e-mail)