**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #:_____
DATE FILED: 3/31/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES,

                    Plaintiff,

        -against-

PUFF BAR, et al.,

                    Defendants.

25-CV-01445 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Defendants in this case are manufacturers and distributors of flavored e-cigarettes. The Attorney General, acting on behalf of the People of the State of New York, alleges that Defendants' sales and advertisements of their e-cigarette products in New York violate state and federal laws. Specifically, the State alleges that Defendants violated New York Executive Law section 63(12) ("Section 63(12)") and the federal Prevent All Cigarette Trafficking Act (the "PACT Act"). The State also brings claims for common law public nuisance, gross negligence, willful misconduct, and unjust enrichment in connection with Defendants' sales and advertising activities in New York. Defendants have moved to dismiss the State's Section 63(12), gross negligence, willful misconduct, and unjust enrichment claims pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 78, and to sever the State's case into separate cases for each defendant pursuant to Federal Rule of Civil Procedure 21, Dkt. No. 62. For the reasons set forth below, the motion to dismiss is GRANTED as to the willful misconduct and unjust enrichment claims and DENIED as to the Section 63(12) and gross negligence claims; Defendants' motion to sever is also DENIED.

## BACKGROUND

I.    **RELEVANT FACTS**[1]

### A. Background on E-Cigarettes

E-cigarettes, otherwise known as "vapes," are battery-powered devices that electronically deliver nicotine. Compl. ¶ 46. E-cigarettes deliver nicotine to users by heating a nicotine solution so that it converts into an inhalable aerosol or vapor form. *Id.* The nicotine solution is commonly referred to as "e-liquid," "e-juice," "vape juice," or "vape liquid." *Id.* E-liquids are composed of natural nicotine extracted from tobacco or synthetic nicotine made from a mix of water and chemicals. *Id.* ¶ 47. E-liquids can be formulated to replicate the taste of tobacco or to taste like other non-tobacco flavors, such as candy, fruit, or dessert flavors. *Id.* E-cigarettes typically have high nicotine content. *Id.* 68. For example, a typical e-cigarette has roughly double the amount of nicotine as a pack of combustible cigarettes. *Id.*

E-cigarettes come in one of three forms: pre-filled e-cigarettes, refillable e-cigarettes, and disposable e-cigarettes. *Id.* ¶ 48. This case concerns disposable e-cigarettes, otherwise known as "disposable vapes." *Id.* A disposable e-cigarette comes with a fully charged battery and pre-filled e-liquid. *Id.* Disposable e-cigarettes are the least expensive type of e-cigarette and are intended to be discarded once their e-liquid store has been used up. *Id.* Disposable e-cigarettes have a high nicotine capacity; they can hold the nicotine equivalent of more than 10 packs of cigarettes in a single vape. *Id.* ¶ 70. The disposable e-cigarettes at issue in this case contain non-tobacco-flavored e-liquids. *Id.* ¶ 47. Examples of the flavors Defendants sell include "Blue Razz Ice," "Watermelon Slush," "Strawberry Donut," "Pina Colada," "Pink

---

[1] The following facts are taken from the allegations in the Complaint ("Compl."), Dkt. No. 1, and are assumed true for the purpose of resolving the motion to dismiss.

Burst," and "Strawberry Peach Gush."  *Id.* ¶¶ 181, 341, 362, 402.  The State describes these flavors as "kid-friendly" and "enticing."  *Id.* ¶¶ 66, 181.

Prior to 2020, the most popular e-cigarette company was known as "JUUL."  *Id.* ¶ 54. JUUL "developed bright, colorful ads and fruity, sweet-tasting JUUL pods that came in non-traditional flavors, such as mango and mint, which attracted young users."  *Id.* ¶ 55.  In response to JUUL's popularity, particularly among young people, the FDA prohibited the sale of unauthorized non-menthol or non-tobacco-flavored e-cigarettes.  *Id.* ¶ 56. The FDA regulations, combined with various lawsuits against JUUL, "forced JUUL to remove all but its tobacco and menthol-flavored products from the market."  *Id.* ¶ 58.

The State alleges that JUUL's decline left "a void in the e-cigarette market that certain Defendants recognized and exploited."  *Id.* ¶ 58.  The State further alleges that Defendants' conduct led to "the explosive increase in the use of e-cigarettes among youth within the past ten years."  *Id.* ¶ 75.  Specifically, the State alleges that the following conduct has contributed to the rise of youth e-cigarette use: (1) advertising campaigns "that include bright and colorful images of attractive young people"; (2) marketing that "promis[es] the ability to use the devices without detection or interruption by adults"; and (3) "offering a wide variety of kid-friendly fruit and candy flavors."  *Id.*

## B.  Defendants' E-Cigarette Businesses

Flavored e-cigarettes are principally manufactured in China and shipped to distributors in the U.S. directly or through freight-forwarding agencies.  *Id.* ¶ 157.  Each Defendant is a distributor of e-cigarettes in New York that sells to distributors, wholesalers, retailers, or individuals.  *Id.* ¶¶ 32, 159.  Each Defendant's specific role in the e-cigarette business is as follows.

### 1.    The PUFF Defendants

The State alleges that Defendants Puff Bar, Evo Brands, and PVG2 (together, the "PUFF Defendants") are "affiliates that operate a common enterprise to sell PUFF brand Disposable Vapes to distributors, wholesalers, retailers, and/or individual consumers in New York." *Id.* ¶ 178. In 2021 and 2022, PUFF brand disposable vapes were the most popular e-cigarette used by youth. *Id.* ¶¶ 194–95.

### 2.    The DEMAND Defendants

Defendants Magellan Technology Inc. and Ecto World LLC (together the "DEMAND Defendants") are affiliated corporate entities that import and distribute flavored e-cigarettes "more than any other company in the U.S." *Id.* ¶ 231. The State alleges that the DEMAND Defendants sold and made shipments to e-cigarette distributors, wholesalers, and retailers in New York. *Id.* ¶ 232. Specifically, Defendant Magellan imports flavored e-cigarettes from China for which Demand Vape is the exclusive distributor. *Id.* ¶ 234.

### 3.    Happy Distro

Defendant Happy Distro is a flavored e-cigarette distributor that marketed, sold and shipped products to New York, including by sales and shipments to distributors, wholesalers, and retailers. *Id.* ¶ 288–89.

### 4.    Midwest Goods

Defendant Midwest Goods Inc. ("Midwest Goods") is a distributor of flavored e-cigarettes that marketed, sold, and shipped products into New York. *Id.* ¶¶ 320–21. Midwest Goods is the "exclusive master distributor" of certain e-cigarette brands. *Id.* ¶ 338.

### 5.    Pod Juice

Defendant 10 Days Inc. ("Pod Juice") is a manufacturer and distributor of flavored e-cigarettes that sold and made shipments to distributors, wholesalers, retailers and individual consumers in New York. *Id.* ¶¶ 359–60.

### 6.    Safa Goods

Defendant Safa Goods LLC ("Safa Goods") is a distributor of flavored e-cigarettes that sold and made shipments to distributors, wholesalers, and retailers in New York. *Id.* ¶¶ 391–92.

### 7.    Mi-One

Defendant SV3, LLC ("Mi-One") is a distributor of its own branded flavored e-cigarettes which it sold to New York distributors, wholesalers, retailers, and individual consumers. *Id.* ¶¶ 410–11.

### 8.    The MYLÉ Defendants

Defendant Mylé Vape is a distributor of disposable vapes bearing the Mylé brand. *Id.* ¶ 438.  Defendant MVH I is the owner of the word-mark trademark, MYLÉ. *Id.* ¶ 437.  The State alleges that MVH I and Mylé Vape (together, the "MYLÉ Defendants") are "affiliates that operate a common enterprise to sell MYLÉ brand Disposable Vapes to distributors, wholesalers, retailers, and/or individual consumers in New York." *Id.* ¶ 440.

### 9.    Price Point

Defendant Price Point Distributors Inc. ("Price Point") is a New York-based distributor and retailer of flavored e-cigarette products that made sales and shipments to e-cigarette distributors, wholesalers, retailers, and individual consumers in New York. *Id.* ¶¶ 466–67. Defendant Weis Khwaja is the President of Price Point. *Id.* ¶ 28.  Defendants Hamza Jalili and Mohammad Jalili are the corporate secretary and a shareholder of Price Point, respectively. *Id.* ¶¶ 29–30.

### C. Defendants' Advertising Practices

The State alleges that Defendants' advertising practices violated Section 63(12) in a variety of ways.  The examples cited by the State include:  creating "sweet and fruity flavors known to appeal to youth"; using social media content as a core marketing strategy, including by making posts "featuring young people and using colors, filters, and social media interactive elements"; making misleading representations concerning the health or safety of flavored e-cigarette products; portraying their products as accessible and convenient; depicting their business as legal or FDA-compliant; using rewards programs to entice consumers; and conducting promotional campaigns that include discount and bunding offers.  *Id*. ¶¶ 209, 247, 261, 329, 348, 374.

## II.    REGULATIONS GOVERNING THE SALE OF FLAVORED E-CIGARETTES

The sale and distribution of e-cigarettes is regulated by a variety of federal, state, and local laws.

### A. New York Public Health Law

The New York Public Health Law contains several provisions that regulate the sale of flavored e-cigarettes.  First, subsection 1399-mm-1(2) provides "No vapor products dealer, or any agent or employee of a vapor products dealer, shall sell or offer for sale at retail in the state any flavored vapor product intended or reasonably expected to be used with or for the consumption of nicotine."  N.Y. Pub. Health L. § 1399-mm-1(2).[2]  Second, section 1399-ll governs the shipment or

---

[2] This section does not apply to "any vapor products dealer, or any agent or employee of a vapor products dealer, who sells or offers for sale, or who possess with intent to sell or offer for sale, any flavored vapor product intended or reasonably expected to be used with or for the consumption of nicotine that the U.S. Food and Drug Administration has authorized to legally market as defined under 21 U.S.C. § 387j and that has received a premarket review approval order under 21 U.S.C. § 387j(c) et seq." *Id.* at 1399-mm-1(4).  According to the State, "[t]he FDA has not granted a premarket authorization order to any manufacturer or importer for an e-cigarette product in any flavor other than tobacco or menthol." Compl. ¶ 151.  In other words, any sale of flavored e-cigarettes, other than tobacco or menthol-flavored,

transport of cigarettes and vapor products into New York.  Section 1399-ll renders unlawful the sale of flavored e-cigarettes to any person who is not "(a) a licensed vapor products retailer, (b) an export warehouse proprietor or customs bonded warehouse operator, or (c) an officer, employee or agent of the U.S. government."  Compl. ¶ 555; N.Y. Pub. Health L. § 1399-ll(1-a).  Section 1399-ll also contains packaging and labeling requirements for vapor product shipping.  N.Y. Pub. Health L. § 1399-ll(3).  Third, sections 1399-bb and 1399-bb-1 prohibit promotional activities by e-cigarette manufacturers and distributors such as sponsoring athletic or musical events as well as certain discount promotions of tobacco or vapor products.  Finally, Public Health Law section 1701 requires manufacturers of vapor products (defined broadly to include importers or the first domestic distributor of a vapor product) to disclose detailed information regarding the product ingredients.  *Id.* §§ 1700(7), 1701(1).

### B.  The PACT Act

The PACT Act is a federal law that regulates the delivery sales[3] of cigarettes, which includes "electronic nicotine delivery system[s]."  15 U.S.C. §§ 375(2)(A)(ii)(II), 376a.  It requires "delivery sales into a specific State" to comply with, *inter alia*, "all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place."  15 U.S.C. § 376a(a)(3).  It also imposes requirements for shipping packages containing cigarettes such as age verification, weight restriction, record-keeping, and labeling requirements.  *Id.* § 376a(b)–(c).  Similarly, the

---

cannot be subject to the exemption because no such e-cigarette manufacturer has received the requisite FDA pre-market approval.

[3] "Delivery sales" are defined as sales (1) to a consumer if the consumer places the order via telephone, the mail, or the internet, or otherwise is not in the physical presence of the seller when the order is placed; or (2) where the products are delivered by common carrier or other remote delivery service, or the seller is otherwise not in the physical presence of the buyer when the buyer takes possession of the product.  15 U.S.C. § 375(5).

Act requires "[a]ny person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce . . . or who advertises or offers cigarettes or smokeless tobacco for such a sale, transfer, or shipment" to register with the Attorney General and the tobacco tax administrators of the state into which the shipment is being made and to report such shipments. *Id.* § 376(a).

The PACT Act prohibits the delivery of cigarettes to consumers unless the delivery is made to "a person lawfully engaged in the business of manufacturing, distributing, or selling cigarettes or smokeless tobacco." *Id.* § 376a(e)(2)(A)(ii).[4]  The Act also prohibits the sale of e-cigarettes through the U.S. Postal Service.  18 U.S.C. § 1716E.  According to the State, Defendants made sales to both individual consumers and "unlawfully operating distributors, wholesalers, or retailers located in New York" that fall within the definition of consumer under the PACT Act.  Compl. ¶ 101.  The State alleges that all Defendants violated the PACT Act by shipping or causing vapor products to be shipped to consumers, violating the packaging requirements, failing to comply with state laws, failing to register, and mailing vapor products through USPS Mail. *Id*. at 180–86.

### C.  FDA Regulations

The FDA requires e-cigarette manufacturers to seek premarket authorization.  21 U.S.C. § 387j.  The FDA has not provided premarket authorization for any non-tobacco- or non-menthol-flavored electronic cigarettes.  Dkt. No. 78-1 at 5; Compl. ¶ 151.

---

[4] This requirement applies to sales and deliveries to consumers.  15 U.S.C. § 376(d)(4), 376(d)(11).  The PACT Act defines consumers broadly to include corporations and other entities, but excludes those "lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco." *Id.* § 376(d)(4)(A).

## DISCUSSION

I.    **LEGAL STANDARD ON A MOTION TO DISMISS**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").  However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

II.   **THE STATE PLAUSIBLY ALLEGES VIOLATIONS OF EXECUTIVE LAW SECTION 63(12)**

Section 63(12) "empowers the Attorney–General to seek an injunction, restitution, and damages against any person who engages in repeated illegal acts." *People v. Concert Connection, Ltd.*, 629 N.Y.S.2d 254, 255 (1995).  The statute defines "repeated" as "repetition of any separate and distinct fraudulent or illegal act, or conduct which affects more than one person." N.Y. Exec. Law § 63(12).  The law "offers two strains of liability":  one for "fraud"

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

and one for "repeated illegal acts." *New York by James v. Citibank, N.A.*, 763 F. Supp. 3d 496, 535–36 (S.D.N.Y. 2025). "Under § 63(12), the test for fraud is whether the targeted act has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud." *People ex rel. Spitzer v. Gen. Elec. Co.*, 756 N.Y.S.2d 520, 523 (2003). To establish liability for repeated illegal acts, the Attorney General must establish a "predicate violation of another law." *Citibank, N.A.*, 763 F. Supp. 3d at 536. "Courts have interpreted this provision to mean that any conduct which violates state or federal law or regulation is actionable under Executive Law § 63(12)." *Id.*

### A. This Case Serves a Legitimate Public Interest

Defendants claim, as a threshold matter, that the Attorney General lacks authority to bring this suit pursuant to Section 63(12) because the lawsuit does not "serve a public interest distinct from private interests." Dkt. No. 78-1 at 26. The State rebuts that allegation by arguing that it "has a public interest in protecting public health, and the Complaint cannot be fairly read except as a civil enforcement effort to protect that interest." Dkt. No. 86 at 19. The Court agrees with the State. It is clear from the face of the Complaint that the State's purpose in bringing this case is to address public health issues associated with the use of flavored e-cigarettes, particularly but not exclusively by young people. *See* Compl. ¶ 499. The State alleges that Defendants' conduct "entices New York's youth to begin vaping and continue vaping, which increases their risk of illness and complications caused by the flavored vapor products themselves and also increasing the likelihood that they will ever use combustible cigarettes and experience all the grave harm and suffering associated with that conduct." *Id.*

By bringing this lawsuit, the State seeks to curtail the rise of youth e-cigarette use by enjoining advertising and conduct that, according to the State, are likely to drive such use. "It is well settled that public health is a legitimate state interest." *Doe v. Franklin Square Union Free*

10

*Sch. Dist.*, 100 F.4th 86, 98 (2d Cir. 2024); *see also Council for Responsible Nutrition v. James*, 159 F.4th 155, 164 (2d Cir. 2025) ("When it comes to safeguarding the physical and psychological well-being of a minor, [the State's] interest is not only substantial, it is compelling."). Accordingly, based on the Complaint, the State has a well-established public interest in bringing this case.

### B. The State Has Sufficiently Alleged Repeated Illegal Conduct

"Any conduct which violates state or federal law or regulation is actionable under Executive Law § 63(12)." *Fed. Trade Comm'n v. Shkreli*, 581 F. Supp. 3d 579, 627–28 (S.D.N.Y. 2022). The State alleges that Defendants are liable under Section 63(12) by repeatedly violating (1) various provisions of the New York Public Health Law; (2) the PACT Act's (a) registration and reporting requirements, (b) delivery sales requirements, and (c) prohibition on mailing e-cigarettes; and (3) the Federal Trade Commission Act. Compl. ¶ 530. Defendants raise three arguments why the State's Section 63(12) claim premised on repeated illegal acts should be dismissed. First, they allege that certain provisions of the New York Public Health Law that the State cites as predicate acts do not apply to them or do not apply to all Defendants uniformly. Dkt. No. 78-1 at 28–30. Second, they allege that the application of the Public Health Law without use of the enforcement procedures set forth in the statute violates Defendants' due process rights. *Id.* at 30. Third, they argue that the State's claims based on violations of the Federal Trade Commission Act as the predicate act are preempted by federal law. *Id.* at 32. None of these arguments provides grounds for dismissal at this stage of the case because the State has, at a minimum, plausibly pled a violation of Section 63(12) based on violations of the PACT Act.

Where, as here, a claim is based on multiple theories of liability a plaintiff "need only plausibly plead one theory for the claim to survive dismissal." *Talkdesk, Inc. v. Unique Travel*

11

*Corp.*, No. 23-CV-09543 (JPC), 2024 WL 4904684, at *3 n.5 (S.D.N.Y. Nov. 27, 2024) ("A cause of action that is based on one set of facts but that contains multiple, alternative legal theories supporting relief is still just one claim."). Accordingly, to survive a motion to dismiss, the State need only plead one plausible theory that Defendants violated Section 63(12) based on committing repeated illegal acts.

The State plausibly alleges, at minimum, that Defendants violated Section 63(12) through repeated violations of the PACT Act. Defendants do not dispute that the PACT Act imposes labeling, weight, age verification, and record-keeping requirements for delivery sales of e-cigarettes. *See* Dkt. No. 78-1 at 9–10. The State plausibly alleges that each Defendant repeatedly violated these requirements during the relevant time period through their commercial conduct. *See, e.g.*, Compl. ¶¶ 229 (PUFF Defendants failed to comply with record-keeping requirements), 287 (DEMAND Defendants violated weight limit and record-keeping requirements), 311, 319 (Happy Distro violated weight limits), 358 (Midwest Goods violated weight limit and record-keeping requirements), 384, 390 (Pod Juice violated weight limit and record-keeping requirements), 409 (Safa Goods violated weight limit and record-keeping requirements), 434 (Mi-One violated weight limit and record-keeping requirements), 463, 465 (MYLÉ Defendants violated weight limit and record-keeping requirements), 488, 496 (Price Point, through each Individual Defendant, violated age verification requirement). Defendants do not argue that these alleged acts are in compliance with the law. Nor do they move to dismiss the State's separate causes of action for violations of the PACT Act. Accordingly, the State has plausibly alleged a claim for violations of Section 63(12) based on Defendants' alleged

12

violations of the PACT Act, and they need do no more to defeat Defendants' motion to dismiss the First Cause of Action: Repeated and Persistent Illegality under Section 63(12).[6]

### C.  The State Has Sufficiently Alleged Fraud Under Section 63(12)

Conduct is fraudulent under Section 63(12) if the "targeted act has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud." *Gen. Elec. Co.*, 756 N.Y.S.2d at 523.  The State alleges that Defendants are liable for fraud under Section 63(12) because they misrepresented or omitted information concerning "(i) the legal status of Defendants' products; (ii) packaging and other materials relevant in the course of shipping their Flavored E-Cigarette products; (iii) appropriate transparency concerning the risks and harms of using their products, as well as the age-appropriate consumer; and (iv) the integrity and proper disclosure of ingredients in their products."  Dkt. No. 86 at 41.

The State has plausibly alleged fraud based on, at minimum, Defendants' misrepresentations concerning the health, safety, and legality of their products.  The State alleges that Defendants either explicitly or implicitly portrayed their products as healthy and/or safe.  For example, it alleges that the PUFF Defendants advertised their product as "produc[ing] vapor without burning carcinogens" and "a health-conscious decision."  Compl. ¶ 221.  Similarly, the State alleges that Defendant Mi-One regularly posts "articles and videos suggesting without any basis and deceptively that vaping is safe," *id.* ¶ 430, and that Mylé describes their e-cigarette products as "safe . . . nicotine delivery systems," *id.* ¶ 447.  Finally, the State alleges that each Defendant misrepresented that flavored e-cigarettes are "generally safe" and "not harmful to a user's health."  *Id.* ¶ 535.  These representations are clearly misleading when compared to the

---

[6] As explained, the Court need not reach the sufficiency of the State's other theories; nor should this conclusion suggest to any party that the State has failed to plausibly plead a Section 63(12) violation under their other statutory theories.

State's allegation that use of e-cigarettes increases the risk of, among other things "respiratory health issues," "poor cardiovascular health," "development of psychiatric disorders and cognitive impairment in later life," and "interference with cognitive development." *Id.* ¶ 509.

Defendants do not dispute the negative health effects of their products. *See* Dkt. No. 78-1 at 40 ("It is universally acknowledged, including by federal and state health authorities, that e-cigarettes contain nicotine—an addictive substance—and that nicotine use poses health risks."). However, Defendants argue that because "the potential health risks associated with nicotine and e-cigarette use are widely known and publicly accessible," Defendants' statements about the health and safety of their products cannot amount to fraud. *Id.*  That argument misconstrues the function and purpose of Section 63(12), which was enacted "to protect not only the average consumer, but also the ignorant, the unthinking and the credulous." *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 805 N.Y.S.2d 175, 177 (2005).  Furthermore, even if information about the health risks of nicotine—a component of Defendants' products—are well-known, it could still be misleading, under the State's factual allegations, for Defendants to describe the product as a whole as healthy or safe.

Finally, Defendants argue that the State's fraud allegations are "impermissibly vague" and fail to give sufficient notice to Defendants of the claims against them, under Federal Rule of Civil Procedure 12(e). Dkt. No. 78-1 at 43.  The Court disagrees.  The State has clearly alleged the types of statements that it views as fraudulent, *see, e.g.*, Compl. ¶ 535, and provided numerous specific examples of those statements throughout their nearly 200-page Complaint. Additionally, all of these statements cannot be dismissed as puffery.  Although some advertising or marketing statements can be treated "as non-actionable puffery as a matter of law," only "exaggerations or overstatements that mention nothing specific, but rather amount to general

14

claims of superiority expressed in broad, vague, and commendatory language that are considered to be offered and understood as an expression of the seller's opinion only" fit into this category. *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023).  Many of the alleged statements highlighted in the Complaint clearly fall outside this category.  Even if some of the identified statements are puffery, Defendants would need to establish that they are the type of statements that "no reasonable buyer would be justified in relying on." *Id.* at 96–97.  That "fact intensive inquiry" cannot be resolved on a motion to dismiss. *Id.* at 97.  As discussed above in connection with the Complaint's first cause of action, the State does not need to demonstrate that every example of repeated and persistent fraudulent conduct cited in the Complaint is sufficient.  They need only to demonstrate that the Complaint plausibly alleges sufficient repeated and persistent fraudulent conduct to plead a violation of Section 63(12).  They have done so, and accordingly Defendants' motion to dismiss the Second Cause of Action: Repeated and Persistent Fraudulent Conduct under Section 63(12), or, in the alternative, to require a more definite statement under Rule 12(e), must be denied.

## III.    THE STATE PLAUSIBLY ALLEGES GROSS NEGLIGENCE

The State alleges that each Defendant's "false and misleading statements and omissions, and/or its violations of the N.Y. Pub. Health L., in the course of its manufacture, distribution, sale, and/or marketing of Flavored E-Cigarettes" amount to gross negligence.  Compl. at 188.  To bring a claim for gross negligence, a plaintiff must allege "each of the three . . . elements for negligence" as well as "that defendant's conduct 'evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.'" *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 7 (2d Cir. 2009) (quoting *AT & T v. City of New York,* 83 F.3d 549, 556 (2d Cir. 1996)); *see also De Leon v. DraftKings, Inc.*, No. 25-CV-00644 (DLC), 2025 WL 3551627, at *9 (S.D.N.Y. Dec. 11, 2025).  The elements of negligence under New York law are

15

"(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000).

Defendants argue that the State's gross negligence claim must be dismissed because gross negligence is not an independent cause of action under New York law and requires a corresponding tort or contract claim. Dkt. No. 78-1 at 22. The Court disagrees. While a claim for gross negligence necessarily encompasses a claim for negligence, the Court is not aware of, nor do Defendants cite, any authority holding that gross negligence cannot be brought as an independent cause of action under New York law. Additionally, Defendants do not argue that the State has insufficiently alleged gross negligence. Accordingly, the Court denies Defendants' motion to dismiss the State's gross negligence claim at this stage of the litigation.

## IV.    THE STATE'S WILLFUL MISCONDUCT CLAIM IS DISMISSED

The State alleges that Defendants engaged in willful misconduct because they "committed intentional acts of an unreasonable character in disregard of known or obvious risks so great as to make it highly probable that harm would result in the course of its manufacture, distribution, sale, and/or marketing of Flavored E-Cigarettes within the State." Compl. ¶ 580. Defendants seek dismissal of this claim on the same grounds as the gross negligence claim, arguing that willful misconduct is not recognized as a cause of action under New York law. Dkt. No. 78-1 at 22. Unlike for gross negligence, there is case law in this Circuit holding that willful misconduct is not a standalone claim under New York law. See *Doe v. Sigma Chi Int'l Fraternity, Inc.*, No. 23-CV-01452 (AJB) (ML), 2025 WL 2203001, at *14 (N.D.N.Y. Aug. 4, 2025) ("New York does not recognize a cause of action for willful and wanton misconduct.") (citing *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 945 (N.Y. 1994)). The thin caselaw cited by

16

the State is not persuasive.  Because it is not a recognized independent cause of action, the State's willful misconduct claim is dismissed.

**V.  THE STATE FAILS TO STATE A NON-DUPLICATIVE CLAIM FOR UNJUST ENRICHMENT**

Unjust enrichment is a "quasi-contract cause of action requiring the plaintiff to establish: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018).  The State alleges that each Defendant "unjustly enriched itself at Plaintiff's expense" through "conscious and continuing wrongdoing."  Compl. ¶ 584.  Defendants seek dismissal of this claim, arguing that it is duplicative of the State's other claims and legally insufficient.  Dkt. No. 78-1 at 23–25.

"Even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 586 (S.D.N.Y. 2024); *see also Chalmers v. Nat'l Collegiate Athletic Ass'n*, No. 25-1307-CV, 2025 WL 3628416, at *6 (2d Cir. Dec. 15, 2025) ("Applying New York law, we have held that unjust enrichment claims were barred where they were duplicative of statutory claims.") (summary order).  The State argues that the claim "has the potential to stand in the event that other seemingly duplicative claims fall."  Dkt. No. 86 at 52.  However, the State does not identify <u>any</u> basis to distinguish between the unjust enrichment claim and its other claims.  Because "[u]njust enrichment is not a catchall cause of action to be used when others fail" the State's unjust enrichment claim must be dismissed.  *Louisiana Mun. Police Employees' Ret. Sys. v. JPMorgan Chase & Co.*, No. 12-CV-06659 (DLC), 2013 WL 3357173, at *16 (S.D.N.Y. July 3, 2013).

17

## VI.    DEFENDANTS' MOTION TO SEVER IS DENIED

Defendants seek to sever the State's claims against each Defendant into separate cases. *See* Dkt. No. 62-1.  Federal Rule of Civil Procedure 21 allows a court, "on a motion or on its own" to "add or drop a party" or to "sever any claim against a party."   Fed. R. Civ. P. 21.  "In considering a motion to sever, the Court must weigh several factors, including "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Bent v. Zounds Hearing Franchising, LLC*, No. 15-CV-06555 (PAE), 2016 WL 153092, at *9 (S.D.N.Y. Jan. 12, 2016). "[T]he joinder of claims is strongly encouraged" and "severance should generally be granted only in exceptional circumstances."  *Waite v. UMG Recordings, Inc.*, No. 19-CV-1091 (LAK), 2021 WL 4776165, at *1 (S.D.N.Y. Oct. 11, 2021).

Here, the relevant factors weigh against severance.  First, the State's claims arise out of the same transactions or occurrences.  "There is no rigid rule as to what constitutes the same series of transactions or occurrences."  *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458–59 (S.D.N.Y. 2011).  However, "courts within this Circuit repeatedly have interpreted the phrase 'same transaction' to encompass all logically related claims."  *Id.*  The State's claims against Defendants are "logically related."  *Id.*  They all seek redress for overlapping violations of state and federal laws.  Furthermore, although the State does not allege that Defendants are co-conspirators, the State does allege that their actions had a cumulative effect.  The State claims that Defendants have "collective control of the New York market" for e-cigarettes and that they "coordinat[e] to ensure that they are each profiting in this saturated market."  Compl. ¶ 498.  The

18

"influx" of flavored e-cigarettes into the New York market arising out of this coordinated conduct, according to the State, has created "a significant threat to public health and safety." *Id.* ¶ 499.

Second, the case involves common questions of law and multiple overlapping questions of fact. The State alleges that Defendants violated many of the same laws in the same way. For example, the State alleges that Defendants committed repeated illegal acts by selling or causing to be shipped flavored e-cigarettes to New York, sometimes to the same wholesalers, retailers, or other consumers. *E.g.*, *id.* ¶ 530. Whether this conduct violates Section 63(12) is a question of law common to all Defendants. Defendants themselves effectively conceded that the case concerns common issues of law by submitting a single joint motion to dismiss for failure to state a claim. *See* Dkt. No. 78. The State's Complaint also raises numerous common questions of fact. As just one example, the State alleges that "Defendants commonly sell and purchase e-cigarette products among themselves to establish an overlapping inventory of various vapor products, brands, and flavors to satisfy customer demands by a single supplier." *Id.* ¶ 497. As another example, the Complaint's numerous allegations of negative health effects and other negative societal consequences of Defendants' activities will also involve common issues of fact.

Given the overlapping questions of law and fact, maintaining a single case will facilitate judicial economy by allowing for resolution of these questions simultaneously, as well as coordination of discovery, motion practice, and settlement. As to the question of prejudice, Defendants allege that severance will avoid jury confusion at trial. *See* Dkt. No. 62-1 at 17. If Defendants continue to believe that severance is required at the trial stage to avoid prejudice before a jury, they may renew their motion at that time. Finally, while presumably there will be some witnesses and documents applicable to only one or some Defendants, that is not alone a

factor favoring severance, and undoubtedly there will be documents and witnesses common to all Defendants as well.

Taking all of the relevant factors into account, severance is not warranted at this time, and the motion is denied.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED as to the State's willful misconduct and unjust enrichment claims and DENIED in all other respects. Defendants' motion to sever is also DENIED.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 62 and 78.

Dated: March 31, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

20