**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| PEOPLE OF THE STATE OF NEW YORK, | ) ) ) ) | |
| *Plaintiff,* | ) ) | No. 1:25-cv-01445-MMG |
| v. | ) ) | |
| PUFF BAR, *et al.*, | ) ) | |
| *Defendants.* | ) ) | |

**DEFENDANTS' RESPONSIVE BRIEF ON THE
APPROPRIATE INTERPRETATION OF 15 U.S.C. § 377(b)(1)(A)(ii)**

Defendants Ecto World LLC, Magellan Technology, Inc., Midwest Goods, Inc., 10 Days, Inc., Safa Goods LLC, and SV3 LLC, on behalf of all defendants, respectfully submit this responsive brief to the State's brief (ECF No. 171) concerning the proper interpretation of 15 U.S.C. § 377(b)(1)(A)(ii). The State asks the Court to adopt an expansive reading of "gross sales" that would permit penalties based on nationwide sales, untethered to the jurisdiction in which the alleged violative delivery sales occurred. That interpretation is inconsistent with the statute's text, structure, constitutional limits, and common-sense principles of proportionality. For the reasons set forth below, "gross sales" should be limited to sales into the plaintiff's jurisdiction, and section 377(b)(1)(A)(ii) should be construed to permit, at most, a single 2% penalty for an alleged continuing violation, measured by one relevant one-year period.

## ARGUMENT

**A.    The Plain Meaning of the PACT Act's Statutory Text Limits the Geographic Scope of the State's Enforcement Powers to Their Own Jurisdictions.**

The PACT Act prescribes civil penalties, "in the case of a delivery seller," as the greater of "$5,000 in the case of the first violation, or $10,000 for any other violation" or "for any violation, 2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller during the 1-year period ending on the date of the violation." 15 U.S.C. § 377(b)(1)(A)(i)-(ii). The State claims that this text "contains no modifier that would impose a geographic limitation on each defendant's 'gross sales' to be included in the calculation for determining the civil penalty cap under subsection (ii)." ECF No. 171 at 2. The State is mistaken.

The language "in the case of a delivery seller" *is itself* a modifier and relates section 377(b)(1)(A) to the statutory provision directly preceding it—15 U.S.C. § 376a—which sets forth the requirements for delivery sellers under the PACT Act. Specifically, 15 U.S.C. § 376a requires, "[*w*]*ith respect to delivery sales into a specific State and place*," that delivery sellers comply with

- 1 -

the PACT Act's shipping, labeling, recordkeeping, and age verification requirements, as well as "all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco *as if the delivery sales occurred entirely within the specific State and place*[.]" 15 U.S.C. § 376a(a)(3) (emphasis added). The PACT Act further provides that "a delivery sale shall be deemed to have occurred in the State and place where the buyer obtains personal possession" of the ENDS, 15 U.S.C. § 376a(f), and that interstate sales "shall be deemed to have been made into the State, place, or locality in which such [ENDS products] are delivered." 15 U.S.C. § 375(10)(B).

Courts have an "obligation to interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into an [sic] harmonious whole." *Rivera-Perez v. Stover*, 171 F.4th 196, 208 (2d Cir. 2026).  Read together, the plain text of section 376a regulates delivery sales into a specific state and place, and section 378 provides those specific states and places a cause of action to enforce the regulated activity in their specific jurisdiction. It follows that section 377 prescribes the available penalties for violations within those specific states and places. This is the most logical and coherent reading of the meaning of section 377(b)(1)(A)(i)-(ii) given its statutory context. *See e.g.*, *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 470-71 (2d Cir. 2018) ("The meaning of a statute can be understood 'in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another.'") (quoting *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002)); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) ("In examining a particular provision of a statute, it is important to interpret it in the context of the full statutory scheme.").

The State's statutory interpretation falters at the first step because it fails to consider the statutory scheme within which section 377(b)(1)(A)(i)-(ii) exists. Indeed, the State's brief makes no mention of either section 376a or 378 of the PACT Act. It is no wonder then why the State,

reading section 377(b)(1)(A)(i)-(ii) in isolation, takes a position that is inconsistent with the rest of the statutory text. "Statutory provisions are not written in isolation and do not operate in isolation, so we cannot read them in isolation." *Mass Dep't of Revenue v. Shek (In re Shek)*, 947 F.3d 770, 777 (11th Cir. 2020). "The plain meaning of a statutory provision derives not only from the 'particular statutory language at issue,' but also 'the language and design of the statute as a whole.'" *Id*. at 777 (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). The absence of an express geographic limitation in section 377(b)(1)(A)(ii) simply reflects that Congress wrote the PACT Act *for* the federal government, which needs no such limitation because its jurisdiction is already nationwide. A state, by contrast, has limits to its enforcement power commensurate with the limits to its sovereignty, and New York cannot shed those limits merely by invoking a federal statute. Reading section 377(b)(1)(A)(i)-(ii) consistently with the surrounding statutory text, the 2% gross sales penalty available to states and places enforcing violations of section 376a in those states and places is limited to 2% of a defendant's gross sales within those states and places.

**B.      District Court Cases Interpreting "Gross Sales" in Other Statutes are Immaterial.**

For the reasons explained above, this Court need not look outside the PACT Act to interpret the meaning of the 2% gross sales penalty provision. Nevertheless, the State cites to a handful of cases brought by private citizens against the federal government involving different federal statutes using "terms similar to 'gross sales' as a measure of calculating penalties" to argue that "gross sales" has no geographic limitation. ECF No. 171 at 6. These cases are easily distinguishable.

*Flores v. Nuvoc, Inc.*, 610 F. Supp. 2d 1349 (S.D. Fla. 2008), involved employees who filed an action for overtime compensation against a private employer alleging violations of the Fair Labor Standards Act. The issue there was whether plaintiffs established a claim for overtime compensation under the "enterprise coverage" provision of the FLSA, which required the plaintiffs

to show that the defendant was an enterprise engaged in commerce or in the production of goods for commerce (enterprise coverage). *Id*. at 1351. An enterprise is engaged in commerce or the production of goods for commerce under the FLSA if (1) it has employees that do so *or* (2) the enterprise's "annual gross volume of sales made or business done is not less than $50,000," exclusive of excise taxes. *Id*. Because the defendant did not have employees who were engaged in commerce or the production of goods for commerce, the court turned to the defendant's federal tax returns to determine whether it met the $50,000 gross volume threshold. *See id*. at 1355-56. *Flores* and the issues it presented have no bearing on the situation before this Court. *Flores* involved no state action and required no inquiry into the situs of a party's business activities anywhere besides the state where the action was brought—Florida. Moreover, the only relevance of the $50,000 gross sales volume was that it was a benchmark to determine whether a corporation qualifies as an "enterprise" under the FLSA, not as a calculation of penalties or damages.

The remaining two cases, *Spriggs v. United States*, 660 F. Supp. 789, 793 (E.D. Va. 1987), and *Service Employees International Union v. Commissioner*, 125 T.C. 63, 69 (2005) ("*SEIU*")[1], involved claims brought by a private party and a non-profit organization, respectively, under the Internal Revenue Code ("IRC"). Unlike the PACT Act, the IRC does not provide states or localities with a mechanism for enforcement. In *SEIU*, the plaintiff challenged statutory penalties imposed by the IRS for the SEIU's failure to timely file a complete federal return for tax-exempt organizations. This case is easily distinguishable because it involved a private party suing the federal government over penalties arising from federal tax law. No state was involved in the case.

---

[1] *Service Employees International Union v. United States*, No. C 05-4189, 2008 WL 11411728 (N.D. Cal. Apr. 3, 2008), and *Service Employees International Union v. United States*, 598 F.3d 1110 (9th Cir. 2010), are later opinions issued in the same underlying case.

In *Spriggs*, a private party filed suit against the IRS seeking redetermination of a tax penalty assessed against him for promoting multiple abusive tax shelters. The issue was the proper interpretation of Section 6700(a) of the IRC, which imposes a penalty "equal to the greater of $1,000 or 10 percent of the gross income derived or to be derived by a person from such [violative] activity." Specifically, the court had to determine whether the IRC provided for a penalty of $1,000 *per sale* of an interest in an abusive tax shelter, or whether the $1,000 penalty was a minimum penalty that applied only when 10% (now 20%) of the income derived from the salesperson's overall sales activity for the year is less than $1,000. 660 F. Supp. at 789. The court held that the latter interpretation was proper. This holding does not support the State's contention that the 2% gross sales penalty for alleged violations of the PACT Act occurring in New York and under New York law should be calculated from a defendant's nationwide sales because in *Spriggs* the federal government was enforcing federal law. The location of the violations was irrelevant and was not even mentioned in the opinion. If anything, this case supports the argument Defendants advanced in their opening brief, and which the State has waived, that there can only be one penalty assessment when multiple alleged violations arise from the same underlying continuing conduct.

**C.      The State's Interpretation of "2% of the Gross Sales" Runs Afoul of the Excessive Fines Clause and is Contrary to the Purpose of the PACT Act.**

The State claims that it should be able to impose a 2% gross nationwide sales penalty for Defendants' alleged violations in New York because that would lead to a greater monetary recovery than if it were limited to calculating the penalty from 2% of Defendants' gross New York sales. The State claims—in the context of smuggling and tax evasion, neither of which is at issue here— that its interpretation serves the PACT Act's purpose of "creating strong disincentives to illegal smuggling of tobacco products" and to "make it more difficult for cigarette and smokeless tobacco traffickers to engage in and profit from their illegal activities" "through illegal Internet and

contraband sales." ECF No. 171 at 3-4. The State's citations and arguments in this regard all revolve around smuggling and tax evasion, neither of which is alleged in the complaint. In fact, "the federal Sentencing Guidelines for sentences for trafficking cigarettes . . . make clear that tax evasion is the principal conduct at which these statutes are directed[.]" *New York v. UPS*, 942 F.3d 554, 601 (2d Cir. 2019) (discussing the PACT Act and NY CLS Pub Health § 1399-ll). Indeed, the PACT Act's enforcement provision, section 378(c)(1)(A), specifically gives states and local governments "that lev[y] a tax subject to [Section 376a(a)(3)]" standing.  However, the State's complaint does not even allege that Defendants failed to remit taxes, let alone that they smuggled or trafficked tobacco products to avoid paying those taxes.[2] Given this context, a 2% gross sales penalty that encompasses all non-New York sales, regardless of whether those sales occur in states that tax ENDS products, and regardless of whether those sales even violate the PACT Act or any state or local law where they occur, runs the risk of violating the Eighth Amendment's Excessive Fines clause. *See UPS*, 942 F.3d at 599 n.36 ("In awarding statutory civil penalties, district courts are also constrained, at the outer bounds, by the Eighth Amendment's Excessive Fines Clause.").

The State seeks to avoid these Eighth Amendment concerns by suggesting that the 2% is just a "ceiling" on penalties and that the Court can set lower penalties if appropriate. ECF No. 171 at 2-3. This contention, however, merely sidesteps the issue: If the State's position creates a potentially unconstitutional penalty, then that interpretation should be rejected in favor of one that does not raise the specter of unconstitutional results. *Kennedy v. Braidwood Mgmt.*, 606 U.S. 748, 776 (2025) (finding that courts "must of course avoid reading the statute in a manner that would

---

[2] Indeed, unlike with cigarettes or smokeless tobacco, the State of New York does not even have an excise tax applicable to ENDS products. Rather, New York only imposes a surplus 20% supplemental *sales* tax on retail (i.e., business-to-individual consumer) sales of ENDS products. N.Y. Tax L. § 1181.

render it clearly unconstitutional when there is another reasonable interpretation available"); *Eugene Volokh, Locals Tech. Inc. v. James*, 148 F.4th 71, 100 n.13 (2d Cir. 2025) ("[T]he canon of constitutional avoidance requires that we construe statutes to avoid constitutional defects if 'there is another reasonable interpretation available.'").

In any event, even if the State's assertion that the primary purpose of the PACT Act's penalty provision is to punish and deter further violations is correct, the State's own hypothetical betrays its argument that a 2% gross nationwide sales penalty is the most effective way to do so. *See* ECF No. 171 at 8. The State posits that a delivery seller with $10 million in gross sales that makes one $100,000 bulk shipment into New York in violation of the state's flavor ban would be assessed a $5,000 fine (the greater of $5,000 or 2% of the gross $100,000 sale to in New York) under Defendants' view, and $200,000 (2% of the gross $10,000,000 nationwide sales) under the State's view. With this, the State argues that its view more appropriately punishes bad actors and discourages violations. But the State's hypothetical loses force when one considers the inverse: a business that makes a sale (or sales) worth $9,900,000 in gross revenue from violative sales into New York and sells $100,000 elsewhere. The following table illustrates both scenarios:

<u>**State's 2% Gross Sales Theory**</u>

| Company | **NY Sales** | Non-NY Sales | Gross Nationwide Sales | **2% Gross Nationwide Sales** |
|---|---|---|---|---|
| A | **100,000** | 9,900,000 | 10,000,000 | **200,000** |
| B | **9,900,000** | 100,000 | 10,000,000 | **200,000** |

Under the State's 2% gross nationwide sales theory, Company A, which, for simplicity's sake, can be described as having caused $100,000 worth of injury in New York, is assessed a penalty that is 200% of that injury. Meanwhile, Company B, which has caused $9,900,000 worth of injury to New York, is assessed a penalty that is 2.02% of that injury. In this scenario, Company A, which has caused far less harm to New York, receives a hugely disproportionate penalty to

Company B, which has caused far more harm to New York. The Excessive Fines Clause significantly restricts such disproportionality. *See United States v. Bajakajian*, 524 U.S. 321, 337 (1998) (holding that a civil penalty violates the Excessive Fines Clause if it is "grossly disproportional to the gravity of the defendant's offense.").

"The proper interpretation of the statute applies the penalties evenly to all [violators]." *Spriggs*, 660 F. Supp. at 792; *see also Bond v. United States*, 872 F.2d 898, 901 (9th Cir. 1989) ("agree[ing] with the logic of [*Spriggs*] that the 'proper interpretation of the statute applies the penalties evenly to all [violators]'"). Defendants' theory achieves this more equitable result:

**Defendants' 2% Gross Sales Theory**

| Company | **NY Sales** | Non-NY Sales | Total Nationwide Sales | **2% Gross NY Sales** |
|---|---|---|---|---|
| A | **100,000** | 9,900,000 | 10,000,000 | **$5,000** <br> **[§ 377(b)(1)(A)(i)]** |
| B | **9,900,000** | 100,000 | 10,000,000 | **$198,000** |

Defendants' 2% gross sales theory, which ties the penalty to the injury suffered by the plaintiff jurisdiction, is proportionate. While the State stands to recover more money under its theory, that is not the goal of the PACT Act's penalty provision, as the State itself recognizes.

**D.    The State Has Abandoned Any Argument that the PACT Act Permits Penalty Stacking.**

The State has abandoned any argument that § 377(b)(1)(A)(ii) permits repeated 2% penalties for each alleged shipment or for multiple overlapping one-year lookback periods ("stacking") by failing to address it in its opening brief. The State was on notice that this was an open issue because Defendants specifically raised it in their March 31, 2026 Letter Motion for Request to File Motion in Limine ("Letter Motion"). ECF No. 133. This conclusion is also supported by the fact that Defendants filed an identical letter motion in the parallel action brought

against many of the same defendants by the City of New York, No. 25-cv-02850 (ECF No. 80), and the City addressed Defendants' stacking argument in its opening brief.

In this Circuit, issues not sufficiently argued are deemed waived or abandoned. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived."). It is not enough to mention an issue in passing, incorporate arguments by reference, or state an issue without developing an argument. *Id.* Even partial briefing by a counseled party may support an inference that issues not defended have been abandoned. *Jackson v. Fed. Express*, 766 F.3d 189, 196–98 (2d Cir. 2014). This is not a situation where a party is confronted with an unexpected or previously unraised argument; the penalty stacking issue was one of just two statutory interpretation questions Defendants presented to this Court in their Letter Motion, the other being the geographic scope of the 2% gross sales calculation. The Court should therefore consider the State's decision to brief only the geographic scope question a deliberate abandonment of any penalty stacking theory.

Nor should the State be permitted to cure that omission by relying on or referencing the City's separate submission or by using its responsive brief to advance, for the first time, an affirmative statutory construction argument it chose not to include in its principal brief. The State and City are separate plaintiffs in separate actions. The City's decision to address the stacking issue only underscores that the issue was live and understood; it does not preserve an argument the State itself declined to make. And although the Court may consider the City's position in the City action, the State should not be permitted to bootstrap the City's briefing to preserve unbriefed penalty theories in the State action.[3]

---

[3] Indeed, the State required Defendants to agree not to incorporate by reference in Defendants' responsive brief in this case any arguments from Defendants' responsive brief in the City action as a condition to the State's non-opposition to Defendants' letter motion for leave to file separate ten-

Lastly, to the extent the State attempts to use its responsive submission to advance a statutory stacking theory for the first time, the Court should disregard it. New arguments may not be raised for the first time in replies or equivalent filings. *See Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 23 (E.D.N.Y. 2023) ("It is well-established that arguments may not be made for the first time in a reply brief.") (internal citations omitted); *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) (declining to entertain arguments raised in the reply brief that were omitted in the main brief, because "new arguments may not be made in a reply brief"); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) (striking arguments made for the first time in the appellate court). This rule is designed to prevent prejudice where the opposing party lacks a fair opportunity to respond. *See Bayway Refin. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) (permitting the plaintiff's reply brief to include arguments not previously included in its main brief because the reply was its first opportunity to rebut "new material issues raised" by the defendant's submission). That is not the case here, as Defendants raised the "stacking" issue in their letter motion and the State failed to address the issue either in the State's responsive letter motion or in its principal brief. Accordingly, this Court should treat the argument as waived.

**CONCLUSION**

For the reasons discussed above, Defendants respectfully request that this Court adopt their position that 15 U.S.C. § 377(b)(1)(A)(ii) is properly read to limit "gross sales" to sales into the plaintiff jurisdiction and to permit only a single 2% penalty for an alleged continuing violation, measured by one relevant one-year period.

---

page responsive briefs in both actions. *See* ECF No. 175. The State should not be permitted itself to do the very thing to which it objected.

Respectfully submitted,

THOMPSON HINE LLP

Dated: May 26, 2026                    By: /s/ Eric N. Heyer
                                       Eric N. Heyer
                                       Joseph A. Smith
                                       James C. Fraser
                                       Anna M. Stressenger
                                       Ryan D. Callinan
                                       Irvin Hernandez
                                       1919 M St., NW, Suite 700
                                       Washington, DC 20036
                                       T: 202-331-8800
                                       F: 202-331-8330
                                       eric.heyer@thompsonhine.com
                                       joe.smith@thompsonhine.com
                                       james.fraser@thompsonhine.com
                                       anna.stressenger@thompsonhine.com
                                       ryan.callinan@thompsonhine.com
                                       irvin.hernandez@thompsonhine.com

                                       *Counsel for Ecto World LLC d/b/a Demand
                                       Vape, Magellan Technology, Inc., Midwest
                                       Goods, Inc. d/b/a Midwest Distribution
                                       Illinois, 10 Days, Inc. d/b/a Pod Juice, Safa
                                       Goods LLC, and SV3 LLC*

                                       *And on behalf of all other Defendants.*

- 11 -