**Office of the New York State Attorney General**

**Letitia James**
**Attorney General**

October 16, 2026

VIA ECF
Hon. Valerie Figueredo
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 1660
New York, New York 10007

*Re: State of New York v. Puff Bar, et al.,* Case No. 25-cv-01445 (MMG) (VF)*;*
*City of New York v. Puff Bar, et al.*, Case No. 25-cv-2850 (MMG) (VF)

Dear Judge Figueredo:

This Office represents the State of New York (the "State") and submits this letter in compliance with this Court's September 25, 2026 Order, (ECF No. 239), directing Plaintiffs to respond to Defendants' letters regarding their "Attorneys' Eyes Only" and "Confidential" designations by October 16, 2026. (the "Order"). The State respectfully submits this letter with the City in both above-captioned cases. As described below, no Defendant has established entitlement to the protections of "AEO" or "Confidential" designations. Defendants have (i) failed to properly and sufficiently address *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006); (ii) have not made the necessary showing of competing interests sufficient to warrant protection; and (iii) generally have engaged in unnecessary and overly broad designations of basic documents. Defendants' interests are stated in conclusory fashion, variously alleging sensitive information, business practices and competitive disadvantage without demonstrating that any particular document or piece of information, however embarrassing or inconvenient if publicly disclosed, should be shielded from view at the expense of the substantial public interest in disclosure.

Pursuant to the Order, all Defendants except Midwest Goods[1] submitted letters on October 9, 2026, purporting to justify the sensitive treatment of specific categories of documents. ECF Nos. 244–51. All Defendants argue their designations should not be revisited or subject to challenge because there is already a protective order in place issued by Judge Garnett (the "Protective Order"), (ECF No. 119), and that they are entitled to sealing pursuant to a *Lugosch* analysis. Defendants all insist that as a threshold matter, the mere existence of the Protective Order is

[1] Midwest Goods, Inc. failed to file a letter in support of its AEO and Confidentiality designations and instead filed a notice of consent to entry of default on October 9, 2026. ECF No. 243. However, no default judgment has been entered against Midwest Goods, by consent or otherwise. Because Midwest Goods failed to justify its AEO and Confidentiality designations consistent with the Court's Order, the State respectfully requests that the Court order Midwest Goods to de-designate all its documents. *See* 9/24/26 Tr. 82:20-25, 81:1-7 (making it clear that the Court's order requiring submissions concerning *Lugosch* and confidentiality designations applied to Midwest Goods).

sufficient basis to justify not only the sensitive treatment of entire categories of documents, but also the attendant sealing of such information from public disclosure. Defendants are wrong. "[T]he existence of a protective order covering a document is not, in and of itself, sufficient grounds to seal or redact that document." *Panini Am., Inc. v. Fanatics, Inc.*, No. 23-CV-9714 (LTS)(VF), 2026 WL 1102449, at *1 (S.D.N.Y. Apr. 23, 2026) (citing *In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *5 (S.D.N.Y. Jan. 17, 2023)); *see also Gateguard, Inc. v. Amazon.com, Inc.*, No. 21-CV-9321 (JGK)(VF), 2024 WL 5107287, at *1 (S.D.N.Y. Dec. 23, 2024) (collecting cases). Instead, a fact-based analysis of the interests that purportedly justify sealing is required before the Court can determine whether sealing is appropriate. The Protective Order itself provides that a party may "object[] to any designation of confidentiality . . . at any time prior to the trial of this Action . . . [and] if agreement cannot be reach promptly, counsel for all affected persons will address their dispute to this Court." ECF No. 119, ¶17. That provision is rendered meaningless under Defendants' view that the protective order is the last word on sealing. As described herein, all Defendants fail to satisfy their burden of establishing that good cause exists for the designations, and have not made the "specific, on the record findings" necessary to justify sealing. *Lugosch*, 435 F.3d at 120.

**A. The categories of documents for which Defendants seek coverage under the Protective Order do not meet the *Lugosch* standard.**

Defendants' arguments all fail for the same reasons, by providing generalized high-altitude descriptions of information they wish to protect that is plainly "too broad to reasonably be considered commercially sensitive." *Panini Am., Inc. v. Fanatics, Inc.*, No. 23-CV-9714 (LTS)(VF), 2026 WL 2295862, at *1 (S.D.N.Y. Aug. 10, 2026) (citation omitted). Demand Vape, Magellan, 10 Days, Safa, SV3 and YLSN all proceed from the same premise: that "the issue is premature,"[2] and in any event the designated materials must be sealed because the information is confidential business information that each Defendant "does not publicly disclose, and to which it limits access internally." ECF No. 247, at 6 (Demand Defendants); ECF No. 250 (10 Days), at 6; ECF No. 248, at 6 (Safa); ECF No. 249, at 6 (SV3); ECF No. 246, at 4 (YLSN). Contrary to this overbroad formulation, courts follow the three-step analysis in *Lugosch* to determine whether a document may be sealed.

If the court determines the document is a judicial document for which the common law presumption of access attaches, it then determines the weight of the presumption and performs a balancing test to decide whether sealing is appropriate. *Lugosch*, 435 F.3d at 119–20. "To overcome the presumption of public access over a judicial document, the court must make 'specific, on the record findings; that sealing (1) is necessary 'to preserve higher values,' and (2)

[2] Plaintiffs disagree that "the issue is premature," but, in any event, under the Protective Order, designations are required to be done in "good faith." *See* ECF No. 119, ¶2. Defendants' blanket designations of whole categories of documents as AEO and Confidential are not done in good faith as evidenced by the arguments laid forth in this letter and in the numerous re-designations done by Defendants to date. *See Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866 (JMF), 2014 WL 4100615, at *22 (S.D.N.Y. Aug. 20, 2014) ("redesignated and re-produced documents on nine separate occasions" indicated "Defendants' abuse of the AEO designation throughout the discovery process"). Defendants cannot rely on the Protective Order to justify their egregious over-designating of documents as AEO and Confidential.

'is narrowly tailored to serve that interest.'" *Bionpharma Inc. v. CoreRx, Inc.*, No. 21-CV-10656 (JGK)(VF), 2023 WL 2977998, at *1 (S.D.N.Y. Mar. 6, 2023) (Figueredo, J.) (quoting *Lugosch*, 435 F.3d at 120). At all times, "[t]he burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action[.]" *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).[3] Despite the clear direction of *Lugosch*, and the showing required to overcome the presumption of disclosure, no Defendant has made the necessary showing of injury sufficiently serious to warrant sealing. Puff Defendants and Myle Defendants provide no declaration from an individual with personal knowledge explaining the substantial concrete competitive harm they would suffer if any of the documents were de-designated or not sealed. Puff Defendants, Myle Defendants and SV3 provide no sampling of the types of documents they seek to be designated AEO or Confidential despite this Court's Order directing them to do so. ECF No. 239. These deficiencies alone warrant denial of these Defendants' designations.

Remaining Defendants YSLN, 10 Days, Price Point Defendants, Demand Defendants, and Safa provide declarations in support, each of which offers conclusory assertions of harms, without an explanation of the need for protection. *Lugosch* demands a specific demonstration of the interests served by sealing; Defendants' bare, conclusory assertions are insufficient. *See BakeMark USA LLC v. Negron*, No. 23-CV-2360 (ATB)(CM), 2024 WL 182505, at *1 (S.D.N.Y. Jan. 16, 2024) (quoting *Ashmore v. CGI Grp. Inc.*, 138 F. Supp. 3d 329, 351 (S.D.N.Y. 2015), *aff'd*, 923 F.3d 260 (2d Cir. 2019)) ("[T]he party seeking nondisclosure 'must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test.'"). There is no better illustration of the glaring deficiencies in Defendants' declarations than the Schwartz declaration in *Nanjing CIC International Co., Ltd. v. Schwartz*, No. 20-CV-7031 (EAW), 2023 WL 6958787 (W.D.N.Y. Oct. 20, 2023), on which Defendants mistakenly rely. *See* Plaintiff Ex. 1. The Schwartz Declaration provided substantially more information than any Defendant here, and yet the *Nanjing* court found Schwartz's assertions inadequate to earn an AEO designation as "non-specific and conclusory", failing "to explain how competitors could use this [sales] information to enhance their competitive position." *Nanjing CIC International Co., Ltd.,* 2023 WL 6958787, at *5.

[3] As an initial matter, the State presumes that all the documents identified by Defendants are judicial documents. Review of each of their exhibits (for those Defendants that provided samples) makes clear that these documents are the kind of evidence the parties will necessarily rely on for subsequent judicial proceedings, between summary judgment and trial. For example, Defendants provide documents that will be submitted into the factual record because they are the very documents that the State intends to use in support of its affirmative case: shipping records that demonstrate the weight, content, and method of delivery—the type of evidence necessary to support the State's Executive Law and PACT Act claims. Defendants submit exclusivity agreements for marketing and licensing - the very same types of agreements that are evidence of Defendants' respective control of the market and the public nuisance they have contributed to creating. Defendants submit invoices that demonstrate sales of flavored vape products which are banned in New York, and which evidence violations of the PACT Act and New York's Public Health Law, and support the State's Executive Law § 63(12), PACT Act, public nuisance, and gross negligence claims. Moreover, such sales invoices and spreadsheets will necessarily be a part of the calculation for PACT Act and Public Health Law penalties and fines.

**B. Defendants' letters, declarations and sampling similarly fail to meet the good cause standard necessary to sustain their categorical designations.[4]**

Defendants' letters are replete with conjecture. All Defendants have done is parrot words from the case law, which is insufficient. *Saks Inc. v. Attachmate Corp.*, No. 14-CV-4902 (CM), 2015 WL 1841136, at *17 (S.D.N.Y. Apr. 17, 2015) (a movant cannot satisfy its burden by simply "parrot[ing] conclusory buzzwords"). Price Point Defendants, YLSN, and Puff Defendants further fail to explain with any specificity how de-designation of their documents will result in present competitive harm when they are no longer selling flavored e-cigarettes.[5] That Price Point Defendants and YLSN may choose to resume selling illegal flavored e-cigarettes at any time[6] is entirely speculative and in any event does not provide an adequate or specific showing of harm sufficient to sustain their designations. *See HSqd, LLC v. Morinville,* No. 3:11-CV-1225 (WWE)(HBF), 2013 WL 1149944 (D.Conn. 2013) (rejecting request for protective order because movant's "alleged example of injury is rife with speculative language"); *Montenegro v. NewRez, LLC*, No. 23-CV-00542 (GRB) (JMW), 2024 WL 707284, at *3 (E.D.N.Y. Feb. 21, 2024). YLSN and Price Point Defendants' reliance on *Shalaby v. Irwin Industrial Tool Co*, in which a party sought to terminate a protective order in its entirety so that it could use protected documents from that litigation in another litigation, is misplaced. No. 07-CV-2107-MMA (BLM), 2018 WL 500948, at *5 (S.D. Cal. Jan. 20, 2018). Here, the State is challenging the designations, not attempting to unwind a previously agreed upon protection.

---

[4] Defendants argue that the same categories of documents should be AEO and Confidential with some variations by Myle Defendants, YLSN, and Price Point Defendants. Demand Defendants, Safa, SV3, 10 Days, and Puff Defendants argue the following categories of document should be AEO: (1) sales data, both in composite form and individual invoices; (2) purchase data, both in composite form and individual invoices or orders; (3) PACT Act Reports; (4) shipping related documents; (5) undefined company financial documents; (6) documents related to produce development; and (7) PMTA and other FDA submissions. These same Defendants argue that the following categories of documents should be Confidential: (1) customer licenses; (2) internal documents and communications; (3) agreements and related documents with vendors and service providers; and (4) documents and communications with third parties relating to pricing, purchasing sales, customers, strategy, lobbying or legislative efforts. ECF Nos. 247, at 3-4; 248, at 3-4; 249, at 3-4; 250, at 3-4; and 251, at 2-3. YLSN argues the following categories should be AEO: (1) invoices, (2) purchase orders, (3) PACT Act Reports, and (4) some financial information including tax returns; and that shipping records should be Confidential. ECF No. 246, at 4. Price Point Defendants argue the following should be AEO: (1) sales data (including PACT Act Reports), in aggregate and individual invoices, (2) purchase data, in aggregate and individual invoices, (3) tax returns, and (4) undefined company financial records; and that the following should be Confidential: (1) customer licenses, (2) internal documents and communications, (3) agreements and related documents with vendors and service providers, and (4) documents and communications with third parties relating to pricing, purchasing sales, customers, strategy, lobbying or legislative efforts, and (5) shipping records. ECF No. 245, at 2, 4. Myle Defendants argue the following should be AEO: (1) agreements, (2) sales invoices and purchase orders, (3) PACT Act Reports, (4) shipping records, (5) undefined company financial records, and (6) product development records; that internal records regarding marketing plans, strategy, policies and organization should be AEO or Confidential; and that personal information of consumers and employees should be "Confidential, at minimum." ECF No. 244, at 1-2.

[5] Puff Defendants do not discuss present competitive harm other than the vague statement that their "commercial information remains highly sensitive regardless of how old it is particularly because there is still much misunderstanding regarding the distinction between prior ownership of the Puff brand and the current ownership of the Puff brand." ECF No. 251, at 6. They provide no declaration or documents in support of this statement.

[6] *See* Jalili Affidavit, ¶6 ("Price Point has retained the capacity to resume selling vapor products immediately if it chooses to do so"); Wang Affidavit, ¶17 ("YLSN . . . remain[s] . . . in good standing . . . and may choose to resume their business operations, including the sale of vapor products, at any time.").

All Defendants except YLSN take the incredible position that "[c]ustomer licenses and/or other documents provided by customers . . . demonstrating their ability to lawfully operate" should be confidential. No explanation is provided as to why documents showing what they claim is lawful activity[7] should be shielded from disclosure. Moreover, whether a New York business has a valid certificate to sell vapor products is public information as the Department of Taxation and Finance maintains a live database of registered retail dealers of vapor products. *See* https://data.ny.gov/Government-Finance/Registered-Retail-Dealers-of-Cigarettes-and-Tobacc/55xf-9jat/about_data. Furthermore, businesses are required to prominently display their license. *See* Demand Defendants Ex. B.1. No Confidential protection is afforded to a public document. [8]

Despite appearing to argue that disclosure of unspecified older records would cause harm, Demand Defendants, Safa, SV3, 10 Days, Myle Defendants, Price Point Defendants, and Puff Defendants do not demonstrate how their outdated commercial information would cause them present-day competitive harm warranting heightened AEO protection. *See* ECF No. 247, at 7; ECF No. 248, at 7; ECF No. 249, at 7; ECF No. 250, at 7; ECF No. 244, at 4; ECF No. 245, at 7; and ECF No. 251, at 5. Nonetheless, despite not meeting their burden, the case law makes clear that records older than three years, at a minimum, are too stale to warrant protection. *See e.g. Koch v. Greenberg*, No. 07 Civ. 9600 (BSJ) (DF), 2012 WL 1449186, at *4 (S.D.N.Y. Apr. 13, 2012) (collecting cases where information 3 or more years old was stale); *United States v. Int'l Bus. Mach. Corp.*, 67 F.R.D. 40, 47–48 (S.D.N.Y. 1975) (revenue, sales, and manufacturing data between 3 and 15-years-old not sealed); *JTS Choice Enters., Inc. v. E.I. Du Pont De Nemours & Co.*, No. 11-CV-03143 (WJM)(KMT), 2013 WL 791438, at *4 (D. Colo. Mar. 4, 2013) ("As a general rule, business information that is substantially out of date is unlikely to merit protection under Rule 26(c)"); *Zavala v. Wal-Mart Corp.*, No. 03-CIV-5309 (JAG), 2007 WL 2688934, at *10 (D.N.J. Sept. 12, 2007) (declining to seal documents containing information 3-years-old and older because the party seeking protection did not demonstrate that disclosure could cause a present injury and the stale information was unlikely to give competitors a business advantage).

The privacy of Defendants' customers is not a basis for a Confidential designation. Puff Defendants and Myle Defendants conflate the standard for a Confidential designation with Federal Rule of Civil Procedure 5.2, relating to privacy protections for filings made with the Court; *see also* ECF Rules and Instructions Rules 21.3 and 21.4. That personally identifiable information ("PII") such as birth year and names of minors must be redacted prior to filing is not a basis for an entire document to be designated Confidential—indeed, the PII rules provide the necessary protections to shield sensitive information: redaction.

---

[7] The State does not concede that submission of a vapor product license is evidence that a business is operating lawfully.

[8] Notably, too, 10 Days, Demand Defendants, Safa, and SV3 argue that "FDA submissions and related documents and communications" are categorically AEO; however, this broad category is further evidence of Defendants' over-designation. For example, FDA warning letters, as a matter of course, are public records, *see, e.g.* https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letterson. There is a substantial public interest in understanding how companies respond to publicly issued federal law enforcement warning letters for possible violations of law.

Defendants have not described their purported injury with the specificity necessary to show good cause to maintain their designations, and their designations should not be sustained. *See Deffaa v. Pivotel Am*., Inc., No. 20-CIV-5466 (ER), 2021 WL 4124301, at *1 (S.D.N.Y. Sept. 9, 2021) (categories of documents "are too broad and general for the Court to conclude that their disclosure . . . would cause 'a substantial risk of serious financial, competitive or other injury that cannot be avoided by less restrictive means.'")(cleaned up); *Ben & Jerry's Homemade, Inc v. Unilever PLC*., No. 24 CIV. 8641 (PKC) (GS), 2026 WL 2363979, at *2 (S.D.N.Y. Aug. 13, 2026) (descriptions of information as "sensitive" insufficient to show harm necessary for AEO coverage).

In addition to the above-described broader, overarching concerns with Defendants' letters and declarations, the State also maintains additional concerns about each particular Defendants' respective productions and over-designations, as listed herein.[9] Notably, Demand Defendants Safa, SV3, and 10 Days include a footnote in their letters disclaiming that certain categories were examples but that documents had not yet been produced. The Court should disregard any such argument unless and until the State is given an opportunity to inspect any such categories of designations in order to be able to meaningfully challenge such designations.

1. <u>*Demand Defendants*</u>. Demand Defendants' documents are clearly over-designated and improperly assert AEO or confidential designations. For example, their production includes over 250 incidents of a document containing simply an image of their logo designated as AEO. *See* Plaintiff Ex. 2. They have similarly over-designated as Confidential over 13,000 marketing images, which presumably were used to market their products to the public. *See* Plaintiff Ex. 3. These images have no indicia of being a draft document, and do not contain any sensitive information or information that would cause competitive harm.

2. <u>*Safa*</u>. The infirmities in Safa's documents are similarly egregious. For example, Safa has over-designates as AEO both cover emails—containing no competitively sensitive information—as well as stale purchase invoices and credit statements dating as far back as 2020 and 2021. *See* Plaintiff Ex. 4; Plaintiff Ex. 5; Plaintiff Ex. 6. Even more glaringly, a promotional email that Safa received from Demand Vape in 2022, advertising the "All New Hyde X" – "Now available at www.demandvape.com," has been marked AEO. There is no basis for any designation on this kind of document (an email marketing blast sent by a co-defendant).

3. <u>*SV3*</u>. SV3 has over-designated bills of lading as "AEO." The State has subpoenaed and turned over into discovery bills of lading produced by numerous of Defendants' common carriers. Such production did not have any designations assigned to the documents—nor should they. There is no apparent basis for an AEO designation on such documents.

4. <u>*10 Days*</u>. 10 Days, in particular the Humkar declaration, offers no specific detail as to how its AEO information will result in competitive commercial injury if such information is disclosed. Such conclusory and non-specific statements failed in *Nanjing* and similarly fail here.

---

[9] These individual examinations of Defendants' records is a sampling of the concerns and not exhaustive of the many concerns the State has observed about Defendants' discovery designation practices.

10 Days provides no sampling to support their Confidential designations for "[a]greements and related documents, invoices, and communications with vendors and service-providers" and "[d]ocuments and related communications with third parties relating to pricing, purchasing, sales, customers, strategy, lobbying or legislative efforts" and these categories of documents should all be de-designated as a result. 10 Days designates as AEO blank PACT Act Reports–such documents contain no commercial information, and there is no basis for designating blank forms as AEO. 10 Days has designated as Confidential PACT Act Report cover emails (*see e.g.,* Plaintiff Ex. 7) and innocuous emails discussing the sequencing of marketing outreach (*see* Plaintiff Ex. 8). These emails lack any commercially sensitive information.

5. *YLSN*. YLSN has failed to meet its burden to establish that their invoices, purchase orders, PACT Act reports, and "financial information" should be designated AEO. ECF No. 246 at 3. Much of this information would not cause substantial competitive injury to the extent it is several years old and multiple entities in the YLSN umbrella have stopped operating. YLSN argues that the invoices "reflect the identity of their customers, amounts billed to customers, the negotiated pricing, item description of products purchased, quantity of units purchased and payment history." Wang Aff. ¶5. However, the exemplar invoices at Wang Aff. Exhibit A do not appear to show a negotiated price; there is no discount listed, but instead a standard price that could apply to all customers. YLSN has not produced documents or communications reflecting pricing negotiations with customers, despite State document requests seeking such information. As for the PACT Act Reports, YLSN has marked PACT Act reports with no sales as AEO. *See* Plaintiff Ex. 9. YLSN cannot show good cause for their blanket designation of all PACT Act Reports as AEO. While YLSN has described their financial information generally as including "internal financial statements, profit margins, cost structures, revenue figures, related business planning data and information contained in tax returns" (Wang Aff. ¶7),[10] it has not provided any exemplars in this category for the Court's review and has thus not met its burden.

Separately, YLSN's production contains numerous other examples of over-designations. For example, YLSN designated as AEO a corporate resolution (*see* Plaintiff Ex. 10), and bills of lading misclassifying the products being shipped as smoke detector hardware (*see* Plaintiff Ex. 11). The corporate resolution does not contain information that would cause competitive injury and is likely a public document[11]—there does not appear to be any basis to designate this kind of document AEO. Bills of lading, especially ones with false description of the products being shipped, contain no information that would cause competitive harm if disclosed. Furthermore, such documents have been subpoenaed and produced by the State into discovery, *see infra*.

6. *Puff Defendants*. Puff Defendants fail to do the minimum necessary to satisfy their burden of establishing good cause for the Confidential designation to be presumptively applied to 12 categories of documents, the majority of which have not even been produced to the State.[12] Puff

---

[10] Notably, Ex. D to the Wang Aff. appears to be a document lacking a Bates stamp, likely indicating it was not produced to the State in this action even though the State has demanded production of bills of lading.
[11] Corporate resolutions tend to be available from a Secretary of State for inspection, for example.
[12] No purchase data, shipping related documents, the PMTA, and customer licenses have been produced to the State. The minimal set of documents and communications produced to the State thusfar have all been reproduced from documents provided to the U.S. Permanent Subcommittee on Investigations' investigation of Puff Bar, and Puff

Defendants claim the PMTA should be afforded Confidential protection because it contains "proprietary data and product information . . . not otherwise publicly available", yet fail to include even a sampling of the PMTA for this Court and the State to review. Nor has the PMTA been produced in discovery despite the State's request for its production. Two of the agreements produced by Puff Defendants designated Confidential are publicly available. *See* https://www.hsgac.senate.gov/wp-content/uploads/2024-02-29-PSI-E-cig-Report-Appendix.pdf, at pp. 260-275. Included in the sales invoices which they have designated Confidential are invoices for Puff Cloud socks shipped to customers free of charge other than shipping costs. *See* Plaintiff Ex. 12. No explanation is provided as to how individual sales invoices contain trade secrets or proprietary information that should be afforded Confidential protection *(see* Plaintiff Ex. 13), or how "in the aggregate would provide a competitor or third party with complete information as to . . . pricing or sales strategy".[13] ECF No. 251, at 1. Indeed, Puff Defendants do not even claim their co-defendants are competitors. It is no secret that Puff Defendants sell Puff brand flavored e-cigarettes. The unit price of their product that they advertised on their website and sold to individual consumers is not a trade secret. As for the two CSUR Reports, Puff Defendants have made no showing that disclosure would result in a competitive injury sufficiently serious to warrant AEO protection. They allude to a "private license and a non-disclosure agreement", but fail to provide those documents in support.

As for the required *Lugosch* analysis, Puff Defendants do nothing more than reiterate the three-step test set forth by the Second Circuit. However, "'broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test.'" *Ashmore v. CGI Grp. Inc.*, 138 F. Supp. 3d 329, 351 (S.D.N.Y. 2015) (*quoting In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009), *aff'd*, 923 F.3d 260 (2d Cir. 2019). Puff Defendants' request that documents be marked AEO or Confidential should be denied in their entirety.

7. *Myle Defendants*. Myle Defendants fail to provide a sampling of the documents it seeks to designate as AEO and Confidential, despite being ordered to do so.[14] For that failing, alone, the Court should decline to permit Myle's speculative designations on documents that have not been produced to be examined.

The AEO designations Myle Defendants have applied on documents produced thus far, only raise questions about their claims of competitive harm. For example, Myle Defendants designated as AEO a black and white version of a document that appears to be a mockup of their website's blog (*see* Plaintiff Ex. 14), while a nearly identical color version contains no designation at all *(see* Plaintiff Ex. 15). Not only are their designations internally inconsistent, but there does not seem to be any potential competitive harm from either document's disclosure. Myle Defendants also marked as AEO a document that appears to be their responses to an interview

---

Defendants did not apply a Confidential designation to those documents. Regardless, it is unclear whether such documents Puff defendants want deemed confidential have actually been collected and reviewed. *See* ECF No. 240 ("We are proceeding with collection and imaging of the four accessible [email] accounts . . .").

[13] This is especially so when the two co-owners have represented that they have gradually gone out of business.

[14] Notably, despite referencing categories of documents that should be designated AEO or Confidential, in addition to failing to produce examples to the Court, Myle Defendants have also not produced any such documents to the State. Only recently, on October 14, 2026 did Myle Defendants produce 120 additional documents in discovery.

questionnaire with a third party for an article by "Global Business Leaders Magazine." *See* Plaintiff Ex. 16. Documents with pricing information that Myle Defendants marked AEO appear to marketing offers without any indication that they reflect negotiated pricing. *See* Plaintiff Ex. 17. These designations were all asserted for the first time as part of Myle Defendants' October 8 designation overlay production. The Confidential designations Myle Defendants have made thus far include a single page document with only two lines of text that appears to be vaper product flavor names accompanied by sentence long descriptions and nothing more. *See* Plaintiff Ex. 18. There is no basis on which this document, or others like it, should be designated Confidential.

8. *Price Point Defendants*.[15] Price Point Defendants seeks to mark as AEO sales and purchase data both in aggregate and as individual invoices and orders, tax return information, and financial records. ECF No. 245. None of these documents warrant such a designation. Disclosure of these documents would not cause competitive harm for the reasons described above and because Price Point Defendants have not sold vapor products in almost two years. Jalili Affidavit, ¶ 6. Price Point Defendants describe their Exhibit A as a sales invoice that identifies discounts, but there is nothing in the document that reflects any discount or negotiated price. Similarly, they describe their Exhibit B as a purchase order that identifies "negotiated costs, rebates, and exclusivity terms," (*see* Jalili Aff. ¶14), but nothing in the document indicates any of this—the document appears to reflect an order made from another Defendant in this case. Their Exhibit C is a 2021 "New York State and Local Quarterly Sales and Use Tax Return," to the extent it warrants any protection it would be no more than Confidential.

For all the foregoing reasons, the Court should deny Defendants' designation and sealing requests because they have failed to satisfy their burden under the *Lugosch* standard, and otherwise their confidentiality designations lack basis and should not be sustained.

Respectfully submitted,

/s/ Colleen K. Faherty
Colleen K. Faherty
Special Trial Counsel
*Counsel for Plaintiff* People of the State of New York

/s/ Elizabeth Slater
Assistant Corporation Counsel
*Counsel for Plaintiff City of New York*

[15] Price Point's Exhibits A-D are documents lacking Bates stamps, indicating they have not been produced to the State in discovery even though such materials (a sales invoice, Ex. A; a purchase order, Ex. B; local NY sales and tax return, Ex. C; and a spreadsheet containing financial information relevant to costs and profits, Ex. D) are responsive to the State's discovery requests.